[Crim. No. 3139. In Bank.—November 26, 1928.]

THE PEOPLE, Respondent, v. PERRY COEN, Appellant.

J. C. C. Russell and William R. McKay for Appellant.

U. S. Webb, Attorney General, J. W. Ferguson, District Attorney, and Clarence N. Wilson, Deputy District Attorney, for Respondent.

RICHARDS, J.—The defendant and appellant herein was charged by information with the crime of murder, alleged to have been committed on the fourth day of December, 1927. The information was in two counts, in the first of which the defendant was charged with the murder of one Edna Artist, and in the second count of which he was charged with the murder of George Mace Artist, the two decedents being husband and wife. In each of said counts the defendant was accused of "a felony, to wit, murder, in that on the fourth day of December, 1927, in the county of Kings, state of California, he murdered" the particular decedent. Upon his arrest and arraignment he appeared in court by counsel and filed a demurrer to each of said counts, based upon the contention that the information does not state facts sufficient to constitute a public offense, and that it does not substantially conform to the requirements of sections 950, 951, and 952 of the Penal Code of this state. The trial court overruled said demurrer, whereupon the defendant, without offering any objection or suggestion as to the form or effect of his respective pleas as these are provided for in the recent amendments to the Penal Code, entered a plea of "not guilty" and also entered a plea of "not guilty by reason of insanity" to each count in said information. Prior to the commencement of the trial the defendant applied for a change of place of trial to another county basing his motion therefor upon the contention, supported by his own affidavit and also that of his counsel, that a fair and impartial trial could not be had in the county of Kings, wherein his two alleged crimes had been committed, by reason of the existence of a widespread feeling of bias and prejudice among the people of said county against him. Upon the hearing of said application counter-affidavits in opposition thereto were presented on behalf of the people, with the result that upon such hearing the defendant's application for a change of place of trial was denied. When the cause was thereafter called for trial and a jury was sought to be impaneled for the purposes of such trial, and when a jury panel of twelve persons had been drawn and sworn to answer questions relative to their qualifications to act as such jurors, the trial judge, acting in accordance with section 1078 of the Penal Code as the same was amended in 1927 (Stats. 1927, p. 1039), undertook to examine said

prospective jurors as to their qualifications to serve and act as a fair and impartial jury in said cause; and having so examined certain of said jurors the trial judge undertook, in the exercise of the discretion with which he is invested by the terms of said amended section of the Penal Code, to limit and define the extent of the examination of said prospective jurors on the part of counsel for the defendant. The detail and effect of such limitation will be set forth and considered at a later point in this opinion. When, as the result of the *voir dire* examination, a jury was finally selected and sworn to try the cause, the trial thereof was proceeded with upon the issue raised by the defendant's plea of "not guilty," and during the course of which no evidence was offered upon the direct issue as to the sanity or insanity of the defendant, although the defendant and several other witnesses on his behalf took the stand and testified quite fully and without objection with relation to the facts and circumstances preceding, attending and succeeding the commission of the alleged dual crime. Upon the conclusion of such evidence and the argument of respective counsel the court instructed the jury with relation to the questions of law presented upon the trial of the defendant upon his plea of "not guilty," and in the course of such instructions directed the attention of the jury to the fact that the defendant had entered the plea of "not guilty," and also the plea of "not guilty by reason of insanity," and that under the law existing by virtue of the then recent amendments of the Penal Code, where a defendant entered these two pleas he must first be tried on the plea of "not guilty," and later, if the jury find him guilty, the question of his sanity at the time of the commission of the offense is to be tried before a jury; and in giving these instructions the trial court further instructed the jury that under said recent amendments of the Penal Code the defendant upon his plea of "not guilty" and upon the trial thereof was conclusively presumed to be sane at the time of the commission of his alleged offenses, and that the question of his sanity or insanity at the time of the commission of his alleged crimes would be determined thereafter upon the hearing upon his plea of "not guilty by reason of insanity." The jury having been thus instructed, retired to deliberate upon their verdict, but after a time returned to ask in substance for a re-reading of the instructions.

The court thereupon re-read the entire body of its instructions and the jury again retired, and after a time again returned to request a re-reading of the court's instructions upon the subject of murder and upon the powers and duties of the jury with respect to punishment. The court re-read that portion of its instructions which covered the matters upon which the jury sought further light, and it again retired and presently returned a verdict upon each of the counts in the information, finding the defendant guilty of murder in the first degree and expressly fixing the penalty at death. Upon the polling of the jury and the recordation of the verdict the court proceeded to state to the jury that it had a further duty to perform in view of the fact that the defendant had pleaded "not guilty by reason of insanity"; whereupon counsel for the defendant inquired of the court whether it intended to proceed at once to try that issue. The court replied that it was about to examine the jury for that purpose; whereupon counsel for the defendant interposed a challenge to the entire panel upon the ground that they were biased and prejudiced to an extent which rendered them not capable jurymen to try that issue, and counsel objected to the further progress of the trial upon that ground. The court overruled the challenge and objection and proceeded to examine the jury by asking each of them whether they had any prejudice against the plea of insanity as a defense to crime, and whether they would have any hesitancy in agreeing upon a verdict finding the defendant insane at the time he committed the act in question if the defendant should establish by a preponderance of evidence that he was insane at that time. Each of the jurors in turn answered the foregoing questions asked by the trial judge in the negative. Counsel for the defendant propounded no questions, but stood upon their objection that the jury, having brought in a verdict against the defendant finding him guilty of murder, was disqualified to pass upon the question of his sanity or insanity at the time of the commission of his alleged crimes. Counsel for the defendant also interposed the plea of once in jeopardy, basing said plea upon the record showing the foregoing trial and conviction. The court overruled said plea, and, having done so, continued the further trial of the cause until a later date, and again continued the hearing several times on

account of the illness of the defendant. The cause was resumed on March 21, 1928; whereupon the jurors being present the court directed the clerk to swear the jury, and thereupon counsel for the defendant objected to the jury being sworn until they should have an opportunity to examine them as to their qualifications to proceed to the trial of the issue presented by the defendant's plea of "not guilty by reason of insanity." Counsel for the defendant also insisted upon their alleged right to exercise anew their peremptory challenges, basing this claim upon the assertion that this was another trial upon another issue, as to which they were entitled to re-examine the jury and to exercise peremptory challenges. The trial court overruled the various objections of defendant's counsel and declined to permit them to re-examine the jury or exercise further challenges. Thereupon the clerk read to the jury the information and the defendant's plea thereto as to each of the counts thereof "not guilty by reason of insanity." Thereupon counsel for the defendant renewed their objection to a further trial of the cause, upon the ground that the defendant had been once in jeopardy, which objection the court overruled. It was then stipulated that the evidence which had theretofore been taken upon the defendant's plea of "not guilty" might be considered as introduced in evidence and as read to the jury upon the present hearing upon the defendant's plea of "not guilty by reason of insanity." The hearing then proceeded upon the latter issue, the defendant assuming the burden and producing certain evidence, expert and other, touching the question of his sanity or insanity, and presenting, chiefly in the form of hypothetical questions, a series of facts and circumstances which had reference to the relations existing between the defendant, the two decedents and the daughter of the latter, over a considerable portion of time prior to the commission of the dual homicide. The defendant also introduced the testimony of certain lay witnesses who had known and worked with him for some years prior to the date of said crime, and of an additional lay witness who had occupied the prison with him after his arrest, and which witnesses related peculiarities in the conduct and demeanor of the defendant during the period of their acquaintance with him. The defendant having rested upon said issue, the prosecution introduced considerable

evidence of the same general character as that presented by the defendant, at the conclusion of which the cause upon this issue was argued by respective counsel. The court gave to the jury a body of instructions having particular reference to the defendant's plea of "not guilty by reason of insanity"; whereupon the jury retired to deliberate upon their verdict and presently returned a unanimous verdict finding the defendant sane at the time he committed the offenses set forth in the two counts of the information. Counsel for the defendant thereupon moved the court in arrest of judgment and for a new trial, basing the former motion upon the grounds previously urged and the latter motion generally upon all the grounds set forth in section 1181 of the Penal Code, and particularly upon the various grounds which had been urged during the proceedings upon the trial and upon certain alleged newly discovered evidence with relation to the issue of the defendant's insanity. The court denied the motions in arrest of judgment and for a new trial. Thereupon the court proceeded to pronounce judgment, declaring the defendant guilty of the crime of murder in the first degree upon each count in the information and that he was sane at the time he committed the offenses set forth therein, and sentencing him to suffer the death penalty. From such judgment and the order denying his motion for a new trial the defendant has taken and prosecutes this appeal.

The first contention which the appellant makes upon this appeal is that presented by his demurrer to the information. An examination of the record discloses that the information, as to the charging part thereof, follows substantially, and in fact almost exactly, the language of section 951 of the Penal Code as amended in 1927 (Stats. 1927, p. 1043), prescribing the form of informations for various felonies, including that of murder, and specifically providing that in cases of murder it should be sufficient in the information to charge the defendant with having "murdered" the deceased person. In view of this express provision embraced in the recent amendment to the Penal Code, we are constrained to hold that the objection made by the defendant to the information upon the ground that it was not in sufficient compliance with certain sections of the Penal Code as they existed prior to the making of the aforesaid amendment, is without substantial merit.

The next contention urged by appellant is that the trial court erred in denying his application for a change of place of trial from the county of Kings, wherein his two alleged crimes were committed and wherein he asserted he could not have a fair and impartial trial, to another county wherein the state of bias and prejudice alleged to exist in the county of Kings did not prevail. The record discloses that upon the hearing of said application a large amount of evidence, both in support of and in opposition thereto, was presented to the court and was fully and carefully considered by it, and that in denying the defendant's application it did so with the added statement in its order to the effect that "if it developed at a later date that it is impossible to get an unprejudiced jury the motion may be renewed." The record further discloses that thereupon the impanelment of a jury was proceeded with, with the result that, without any unreasonable or undue extension of such proceeding or any unusual difficulty or delay, a fair and impartial jury was selected from the citizen...ip of Kings County to try the said cause. It further appears that upon the selection of such jury, and prior to the further proceeding with such trial, the defendant renewed his motion for a change of place of trial, but without making or attempting to make any further showing in the way of reasons why his application therefor should be granted than those already presented upon his previous motion, and that the court thereupon finally denied his application for a change of place of trial. We are satisfied, from a careful examination of the record, that the trial court, in the presence of the conflicting evidence presented before it, and particularly in the presence of the fact that it was able without unusual exertion or delay to procure a fair and impartial jury to try the cause, committed no breach of the discretion with which it was invested in the making of its order denying defendant's application for a change of place of trial.

The next contention, which the appellant quite strenuously urges, is that the trial court committed prejudicial error both in assuming to itself conduct the main examination of the jurors upon their *voir dire* and in limiting unduly the right of appellant through his counsel to conduct such further examination of the members of the prospective jury as would suffice to sufficiently disclose the

existence of any fact which might furnish the basis of challenges for cause, or which might otherwise show a lack of qualification on the part of the individual jurors to serve as such upon the jury. The briefs of counsel for the appellant would seem to present a very plausible basis for the foregoing contention, for it is admittedly true that the trial court, in assuming to act in conformity with the provisions of section 1078 of the Penal Code as amended in 1927, did undertake at the outset of the examination of the prospective jurors in this cause to unduly limit the right of counsel for the defendant to conduct such reasonable examination of certain of the prospective jurors as is still permitted under the provisions of said amended section of the Penal Code, which reads as follows: "It shall be the duty of the trial court to examine the prospective jurors to select a fair and impartial jury. He shall permit reasonable examination of prospective jurors by counsel for the people and for the defendant." (Pen. Code, sec. 1078.) Impressed by the earnest contention of counsel for the appellant in the foregoing regard, we have made a most careful examination of the record for the purpose of determining whether there exists therein sufficient showing of prejudicial error which would compel or justify a reversal of this cause. As a result of such examination we find the following to be the facts: At the outset of the trial twelve prospective jurors were called into the jury-box and duly sworn for the purposes of their *voir dire* examination. The examination of the first of these disclosed a sufficient basis for a challenge for cause and said juryman was excused upon such challenge. The next juror examined was one J. J. Smith, who was examined quite at length by the trial judge touching his qualifications to serve as such juror. At the conclusion of such examination by the judge the defendant, through his counsel, undertook to further examine said juror by asking him more particular questions touching his qualifications than those which had been embraced in his previous more general examination. The particular questions thus sought to be asked by defendant's counsel related chiefly to the inquiry as to whether he had read various newspaper articles published prior to the trial regarding the case. We feel satisfied that the trial court unduly restricted the examination of the juror Smith in the foregoing regard,

and that it also unduly restricted the right of counsel for the defendant to make similar inquiries of certain other of the prospective jurors who were among the twelve first called for examination. The record, however, further discloses that the defendant did not present either a challenge for cause or a peremptory challenge as to juror Smith, and that the latter actually served upon the jury which was finally selected to try the cause. As to the remaining ten jurors in this first drawn panel, they were all dismissed, either upon challenges for cause or peremptory challenges preferred by the defendant. Upon the repletion of the jury-box with another quota of prospective jurors the trial judge apparently reconsidered and withdrew from his previous attitude of strictness with relation to the examination of such jurors on the part of defendant's counsel, and not only permitted counsel for the defendant to conduct reasonably an examination of such further prospective jurors as were thereafter called to the jury-box, but in every case wherein the further examination of such jurors was attempted by counsel for the defendant with the purpose in view of revealing possible grounds for challenges for cause, the trial court permitted a practically unrestricted examination. It thus appears that as to every juror who was finally retained to try the cause, with the exception of juror Smith, there was no prejudicial limitation of the rights of the defendant upon the *voir dire* examination. The defendant claimed and was permitted to exercise twenty peremptory challenges upon the trial of the dual charge in the information. With respect to the juror Smith it nowhere appears that after the trial judge had relaxed his earlier strictitude any effort was made on the part of the defendant to further examine said juror prior to his being sworn to try the cause, and it further affirmatively appears that as to said juror Smith no peremptory challenge was presented. The defendant, however, having exhausted his twenty peremptory challenges without having challenged juror Smith, was permitted by the trial court to exercise an additional peremptory challenge with respect to another juror who had been called to the box after the defendant's exhaustion of his quota of peremptory challenges. Having thus procured the aforesaid extension of his right to exercise peremptory challenges, the defendant, as the record discloses,

made no effort to procure a further extension thereof so as to include and excuse Juror Smith, and that without further objection on the part of the defendant the latter juror was, with the other eleven, properly selected as jurors sworn to try the cause. Under the foregoing circumstances, as disclosed by our very careful examination of the record, we have no hesitation in concluding that no prejudicial error was committed by the trial court in the course of the selection of a fair and impartial jury to try the cause.

The next contention urged by the appellant is that the trial court erred in allowing the prosecution to introduce the evidence given by the defendant at the coroner's inquest, which amounted to a confession of the commission of the dual homicide. The basis of this contention on the part of the defendant consists in his claim that the testimony which he gave at the coroner's inquest, while apparently given freely and voluntarily, was in fact a reproduction there of a confession which had been extorted from him by a course of threats, abuse and intimidations to which he had been subjected at the hands of the officers of the law while in jail shortly after his arrest, upon the suspicion that he had committed the aforesaid crime. Upon the defendant's objection to the admission in evidence of his testimony given at the coroner's inquest the defendant testified at length and with much of detail with regard to his aforesaid treatment while in jail and to its effect in inducing the confession made to the officers there. On the other hand, all of the officers whom he thus charged with abuse and intimidation took the stand and denied much of the matter to which the defendant testified. It must be conceded, however, that a considerable amount of harsh treatment and of vile language addressed to the defendant by these officers prior to his confession there remained undisputed, and had the confession which the defendant there gave been offered in evidence at the trial it would be, to say the least of it, a matter of grave doubt as to whether that confession of the defendant given under such circumstances should have been received in evidence. But that confession was not offered in evidence, and the fact is, as shown by the record, that some considerable time elapsed between the date of said jail confession and the time when the defendant was called as a witness and testified at the coroner's inquest.

The practically undisputed evidence shows that when called as a witness at the inquest the defendant was fully informed of his rights in the premises and was practically free from whatever duress had attended him while in the jail. The affirmative evidence of those who were present at the inquest would seem to show that whatever testimony the defendant gave there was freely and voluntarily given. Upon such showing made preliminarily to the offer in evidence of the defendant's testimony so given we are of the opinion that the trial court did not abuse its discretion in allowing the introduction in evidence of the defendant's said testimony. Having done so, and said evidence having been read to the jury, the trial court proceeded to instruct the jury that it was the ultimate judge of the propriety of considering such evidence. In so doing the trial court gave to the jury both the instruction offered by the prosecution and the instruction upon the same subject offered on behalf of the defendant, both of which instructions correctly stating the law and being in entire harmony with each other. Under the foregoing circumstances we are of the opinion that the trial court did not abuse its discretion in permitting the introduction in evidence in the first instance of the defendant's said testimony, and that the defendant was not prejudicially affected thereby, nor by the instructions which the trial court subsequently gave to the jury upon the subject.

The next contention of the appellant requiring comment is that wherein it is urged that the trial court was in error in permitting Ione Artist, a child of the age of nine years, a daughter of the decedents, who was present in the home of her parents and was a witness to certain facts which form a part of the *res gestae* attending the commission of the dual crime, to testify as a witness in the case. Before permitting said child to be sworn and to give her evidence the trial court conducted a quite careful inquiry regarding the mental capabilities of the child and her knowledge of the nature of the proceeding and of her oath and duty to be truthful in relation to the matters with respect to which she was to give her testimony, and we are unable to say that as the result of such careful and searching inquiry on the part of the trial judge he abused his discretion in permitting the evidence of this nine year old child to be given in the case. In support of

this conclusion it may be added that the testimony of this child when given and considered as a whole is in entire harmony with the evidence of her elders given in regard to the same matter with relation to which she was called and gave her testimony.

We come next to consider the contention of the defendant to the effect that sections 1016, 1017, and 1026 of the Penal Code, as amended in 1927 (Stats. 1927, pp. 1148, 1149), are unconstitutional in so far as these sections provide for a dual hearing before the same or another jury upon the defendant's plea of "not guilty" and "not guilty by reason of insanity," made and required to be made by the provisions of the amended sections of the Penal Code above referred to. The record discloses that the defendant upon his arrest and arraignment, and after he had been provided by the court with able counsel, and after both he and they had been informed by the court as to the recent amendments in the Penal Code permitting the presentation by the defendant of the dual plea of "not guilty" and "not guilty by reason of insanity," and after sufficient time had been given to defendant and his counsel to determine what pleas he should present or refuse to present to the charges embraced in the information, tendered without any objections or qualification both of said pleas, and that thereupon the trial of the cause upon the defendant's plea of "not guilty" proceeded before the jury selected as above set forth; that during the course of the trial and up to the time of the submission thereof to the jury the defendant was permitted to testify fully and without objection to his version of the facts and circumstances preceding, attending and succeeding the killings with which he was charged; that during his testimony, and also during the testimony of whatever witnesses he offered during that portion of the trial upon his own behalf, there was neither evidence nor suggestion that the defendant was insane. Neither was there any contention presented by the defendant or his counsel touching the subject of his right to show or to have the jury consider any fact or proof with relation to the defendant's sanity or insanity, either at the time or prior to the commission of these homicides. In the foregoing state of the record this cause was submitted to the jury upon the defendant's plea of "not guilty," and upon a trial thereon.

and upon the instructions as to the law of the case which the trial court then proceeded to give. In the course of giving such instructions as were offered by respective counsel and were either given as offered or as modified by the trial judge, there was an instruction to the effect that, "To each count in this information the defendant has entered the plea of 'not guilty,' and also the plea of 'not guilty by reason of insanity.' Under the law, where a defendant enters these two pleas, he must first be tried on the plea of 'not guilty,' and later, if the jury find him guilty, the question of his sanity at the time of the commission of the offense is tried before a jury. You are instructed that this trial is on the plea of the defendant 'not guilty' entered to each count of the information, that is to say, you are to determine whether or not the defendant committed the crimes charged against him in the information. In this trial the defendant is conclusively presumed to have been sane on December 4, 1927, at the time the offenses are alleged to have been committed." Upon the other phases of this cause the instructions of the trial court were very full and very fair, and the defendant upon this appeal, other than by his attack upon the constitutionality of the foregoing amendments to the Penal Code, has made no objection or claim of error on the part of the trial court in its instructions to the jury. When the jury had been thus instructed and had retired and had later been returned to the trial court twice for the reading, once of the court's entire instructions, and again of those portions thereof relating to the crime of murder of the first degree and to the powers and duties of juries in relation thereto and had finally, and after such repeated instructions, returned to the court with a unanimous verdict finding the defendant guilty of murder of the first degree upon both counts in said information, and expressly fixing his punishment at death, the court announced its intention to proceed before the same jury with the hearing upon the defendant's plea of "not guilty by reason of insanity." The court thereupon proceeded to further examine each of the jurors, touching their qualifications to hear and determine the issue raised by the defendant's said plea, asking of each juror the following questions: (1) "Have you any prejudice against the plea of insanity as a defense to crime?" to which each juror

responded in the negative. (2) "If the defendant should establish by a preponderance of evidence that he was insane at the time he committed the act, would you have any hesitancy in agreeing on a verdict finding him insane at said time?" to which question each juror in turn responded in the negative. Thereupon defendant's counsel insisted upon the right of the defendant to further conduct an examination of said jurors as to their qualifications in the way of existing bias or prejudice to further sit and act as trial jurors in the cause, and also insisted upon the right of the defendant to further exercise peremptory challenges, and counsel for the defendant objected to further proceeding with the cause until they had been accorded the rights thus asserted and insisted upon. The trial court denied each of the foregoing requests, and its denial thereof is now asserted to have been prejudicial error. The defendant thereupon made the further objection to the further hearing of the cause before this or any other jury upon the ground that the defendant, by virtue of the proceedings thus far taken in the cause, had been once in jeopardy, and that to further proceed with the hearing upon the present issue would be to place the defendant for a second time in jeopardy; and in furtherance of said objection counsel for the defendant formally proffered the plea of once in jeopardy. The court overruled said objection and denied said plea, and this action upon its part is also asserted to have been prejudicial error. After a delay of some days owing to the illness of the defendant, the trial of the cause was proceeded with upon the issue raised by the defendant's plea of "not guilty by reason of insanity"; whereupon the defendant proceeded with the introduction of his evidence upon said plea, in the course of which he first offered certain affidavits purporting to have been made by persons living in another and distant state, and in which affidavits the affiants undertook to set forth certain facts with relation to the existence of insanity in certain members of the defendant's family and forbears. The introduction of these affidavits was objected to by the prosecution and the trial court sustained said objection, and this action in so doing is asserted to have been prejudicial error. Thereupon the defendant proceeded to offer in evidence the testimony of two medical experts who were asked and re-

sponded to certain hypothetical questions, and who also testified to having made a personal examination of the defendant during the progress of the trial with special reference to his then existing mental and physical condition. The defendant further introduced the testimony of three lay witnesses, two of whom gave it as their opinion that the defendant was insane, basing their opinion upon their observation of the defendant during the period of some years preceding the commission of said crimes, and the other of whom, a fellow inmate of the jail, gave a like opinion, based upon his observation of the defendant during his confinement there. Thereupon the defendant rested his case upon said issue, and upon his so doing the prosecution introduced a considerable body of evidence of both experts and lay witnesses touching this issue, after which the trial court gave to the jury a body of further instructions covering the issue of insanity, to the scope and sufficiency of which the defendant offers no objection. The jury then retired, and presently returned, as to each count of the information, a verdict finding the defendant sane at the time of the commission of each of the homicides charged therein. The judgment of conviction and sentence was thereupon pronounced by the court.

Upon the state of the record as disclosed by the foregoing facts and circumstances, having special reference to the appellant's contention that sections 1016, 1017, and 1026 of the Penal Code, as amended in 1927, are unconstitutional, we are of the opinion that we are not called upon to determine that question in this case. When the trial court had at the outset of the trial announced its intention of proceeding therewith under the provisions of the aforesaid sections of the Penal Code as thus amended, defendant, acting through his counsel, offered no objection of any kind to that procedure, but, on the contrary, proceeded to tender the dual plea of "not guilty" and "not guilty by reason of insanity," as provided for in said sections of the Penal Code, and thereafter and without objection proceeded with the trial of the cause upon the issue of "not guilty," in the course of which the defendant was permitted to offer such evidence as he desired, and was also permitted without objection to testify fully with reference not only to the events of his past life, but also to his version of the facts and

circumstances surrounding the injuries to the two decedents which resulted in the present death of each and with the occasioning of which he was charged, and having done so he rested his case. When the cause was thus submitted to the jury there was no evidence in the record which in any degree tended to show that the defendant was insane. This being so, the presumption of sanity, whether disputable or conclusive, had full application to the then state of the defendant's case and the jury were bound under the law, whether considered as it existed before or after the enactment of the foregoing amendments to the Penal Code, to apply such undisputed presumption and to find the defendant to be sane. This being so, it must be concluded that the instruction of the trial court to the jury to the effect that at that stage of the case the defendant was conclusively presumed to be sane cannot be held, at most, to have been other than harmless error. ■ With respect to the defendant's objection and plea of once in jeopardy, made for the first time at the inception of the proceedings for the purpose of determining the defendant's sanity upon his second plea, it must be evident that there was no semblance of merit in either said objection or said plea for the reason that, conceding that the defendant had been once put in jeopardy by the event of the trial thus far proceeded with upon his plea of "not guilty," the further proceeding with the hearing upon his plea of "not guilty by reason of insanity," could not by any course of reasoning place him in further jeopardy, since the sole purpose of such hearing was that of permitting the defendant to relieve himself of the state of jeopardy in which he had been thus placed through the showing that at the time of the commission of the crimes of which he had been found guilty he was in fact insane and therefore innocent. The inaptitude of such objection and plea is further illustrated by a consideration of the state in which the defendant would have been placed had the trial court sustained him in such objection and plea, and which would obviously have been that of leaving him fully subject to his prior conviction and penalty and wholly bereft of his opportunity to show that he was insane at the time of the commission of the crimes of which he had been thus convicted. ■ We are thus brought to a consideration of the question as to whether the rights

of the defendant were prejudicially invaded by the refusal on the part of the trial court to permit a further examination of the members of the jury before proceeding with the trial upon the issue of the defendant's sanity in order to determine the existence in the minds of the members of the jury of a state of bias or prejudice with regard to that issue. Conceding, for the sake of argument, that the trial court ought, in the exercise of the discretion entrusted to it under the provisions of section 1078 of the Penal Code as recently amended, to have permitted such examination, the question remains as to whether any error which the trial court may have committed in that regard can be held to have been prejudicial error, and the solution of this question depends upon what further followed in the course of the hearing upon the issue of the defendant's sanity. The defendant, in assuming without further objection the affirmative of that issue, introduced five witnesses in support of his said plea. Two of the three lay witnesses thus produced by the defendant testified that in their opinion the defendant was insane. In support of that opinion, however, said lay witnesses gave testimony as to certain facts and circumstances coming within the observation of each of them during their acquaintance with the defendant prior to the commission of said homicides, and it is obvious that the opinion evidence of such lay witnesses as to the defendant's sanity can be of no greater evidentiary value than that which could be given to the facts and circumstances to which they each testified and which formed the sole basis of their opinion. When we examine the record as to such facts and circumstances we find that these refer to mere oddities or peculiarities in the occasional actions and conduct of the defendant and which show him to have displayed to the observation of these witnesses no greater degree of individuality or even of eccentricity than may be observed in the actions and conduct of most persons who are indubitably sane. The testimony of these two lay witnesses, therefore, must be considered as having no evidentiary value. As to the other of the three lay witnesses, he was an inmate of the jail in which the defendant was confined after the commission of his crimes and during the progress of his trial, and the testimony of this witness is inherently valueless, not only because it related to a time

subsequent to the commission of said homicides, but that it disclosed nothing further than the existence of a degree of nervousness on the part of the defendant which would be nothing more than natural considering the imminent peril in which he stood at the time. As to the defendant's two expert witnesses, each of these was a physician called to testify under an order of court, made in conformity with law, permitting the appointment of expert witnesses by the court in criminal cases. These witnesses, when thus called and examined at the instance of the defendant, were asked to respond to three hypothetical questions prepared and propounded by counsel for the defendant. To the first of these questions, which related solely to the past life of the defendant previous to the commission of his crime, each of said expert witnesses unhesitatingly testified that the facts set forth in said hypothetical question showed no evidence of insanity or unsound mind. The second hypothetical question asked of each of said expert witnesses bore upon the relations which had arisen and existed between the defendant and his two victims and also between the defendant and their elder daughter and to the facts and circumstances arising out of such relationships and assumed to be existent up to the time immediately preceding the infliction of the injuries upon the decedent father and mother of the girl, and to the hypothetical question embracing the foregoing matters each of said expert witnesses testified in turn that there was nothing therein to indicate any degree of insanity or unsoundness of mind on the part of the defendant. By the third hypothetical question asked of these two witnesses counsel for the defendant undertook to relate in detail the facts and circumstances which the evidence in the case had disclosed with reference to the killing of the two persons with whose murder the defendant was charged, and also with reference to the actions and conduct of the defendant as testified to by himself and others immediately following the infliction of the injuries which produced the decedents' death. It is to be noted that in framing this hypothetical question there was omitted therefrom certain details which had an important bearing upon the existence or nonexistence of a motive for the alleged acts of the defendant in subjecting the decedents to the violent injuries which resulted in their present decease.

To the hypothetical question thus framed and asked of each of said witnesses they responded that in their opinion the acts of the defendant as thus related to them indicated temporary insanity at the time of his commission of said crimes. These two expert witnesses each upon their direct examination by counsel for the defendant proceeded to testify that they had each separately conducted a personal and professional examination of the defendant during the progress of the trial and as a result of such examination they each unequivocally stated that the defendant at the time of such examination was both physically and mentally normal and sane. Upon cross-examination said witnesses testified that their opinion that the defendant must have been temporarily insane at the time he committed said crimes was predicated upon the fact that his commission thereof was an illogical sequence of his past life and of his relationship with his two victims, and upon the further fact that in the hypothetical question which had been propounded to them no motive had been disclosed for the commission by him of said crimes. Said witnesses, however, conceded that their conclusion as ot the temporary insanity of the defendant would have been quite different had the evidence in the case and the hypothetical question upon which their opinion was founded disclosed a motive for the commission of the crimes. This is most aptly illustrated by the concluding question asked of the witness Podstata, who quite sufficiently qualified himself as an expert witness by showing that he was the physician in charge of the Livermore sanitarium for the past seventeen years and a lecturer upon mental disorders in the University of California. The following was the final question asked of this witness: "Then the only fact in this hypothetical question upon which you rely in forming your opinion that the man was temporarily insane at the time he murdered these people is the fact that he did murder them and that there was no sufficient cause or motive shown in the hypothetical question?" Answer: "Yes."

An examination of the record quite sufficiently discloses a motive which might have led, and which probably did lead, this defendant to commit this dual crime. That motive was shown to consist in the fact that the defendant, after some years of cordial acquaintanceship with the mem-

bers of the Artist family, and after he had formed an affectionate relationship with Isabelle, the elder daughter, discovered upon his visit to the household of the Artists that the parents of the girl were apparently disposed to favor the transfer of her affections to another suitor, and that the girl herself manifested a similar disposition, and that in fact upon the very evening prior to the commission of said crime he had been deceived and misled with relation thereto. What feelings of jealousy may thus have been awakened, or what resolution as to his actions in the presence of this situation was made, must be left to inference and surmise. But the facts remain that immediately after the violent and murderous attack upon the father and mother of the girl he attempted not only to have illicit intercourse with her but to induce her to go away with him, without disclosing to her or to the other members of the family the fact that a violent and fatal assault had been made upon the father and mother, with relation to which the evidence is irresistible that he either must have committed or must at the time have known of the commission of the assault, and that these facts furnish abundant evidence of the existence of a motive which, if it existed, would have rendered utterly valueless the purely hypothetical conclusion of the expert witnesses called by the defendant that at the time of the commission of said crimes he was temporarily insane.

It is our deduction from the foregoing that there was no substantial evidence in the case sufficient to justify a verdict on the part of this or of another jury finding this defendant at the time of the commission of his aforesaid crimes to have been insane. This being so, any limitation which was placed by the trial judge upon the rights of the defendant's counsel to question further the jurors as to the existence of any mental attitude amounting to bias or prejudice against the defense of insanity or against the defendant seeking to establish that defense could not at the most have been other than harmless error.

The record fully discloses that the defendant committed a most foul, brutal, and utterly unjustified and unjustifiable crime; that he was brought to trial therefor before a fair and impartial jury; that he submitted himself without objection at the outset to the form of procedure adopted by

the trial court; that he presented, without protest or objection, the dual pleas provided for in the aforesaid amended sections of the Penal Code; that he proceeded to trial upon the first of said pleas, in the course of which he was permitted to introduce all of the evidence which he saw fit to offer bearing upon the history of his own past life and upon his relation to the family of his victims and as to his own version as to the facts and circumstances attending and succeeding the commission of his said crimes; that upon his conviction upon the first of his said pleas the only objection which he urged to the purpose of the court to proceed before the same jury upon the second of his said pleas consisted in his insistence upon the right to further examine the jury and upon his claim and plea of once in jeopardy. These having been denied him he proceeded with the second phase of the trial, assuming therein the burden of showing that he was insane. He entirely failed to make good such plea or showing by any sufficient or substantial evidence upon which the present or any other jury could have arrived at a verdict that the defendant was at the time of the commission of said murders insane. It thus appears that entirely regardless of whatever errors, if any, the trial court may have committed in the course of the defendant's trial, it in no substantial way interfered with the canons of our criminal law which entitle a defendant to a fair and impartial trial for the offense or offenses with which he has been charged.

In view of the foregoing conclusions the judgment and order are affirmed.

Shenk, J., Curtis, J., Preston, J., Waste, C. J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.

All the Justices present concurred.