[Crim. No. 2669.   Third Dist.   June 4, 1956.]

THE PEOPLE, Respondent, v. WILLIAM B. BOORMAN,
Appellant.

Wayne P. Burke for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Harold A. Bailin, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Defendant was charged with having burglarized the business office building occupied by the Mel

Coombs Lumber Company at Piercy in Mendocino County. He was found guilty of burglary in the second degree, and following the denial of his motion for a new trial, judgment was pronounced on the verdict. He has appealed from the judgment and from the order denying his motion for a new trial.

Defendant based his appeal on the following contentions:

1. That the evidence was insufficient to sustain a conviction.

2. That defendant was deprived of due process in that he was precluded from making a reasonable examination of prospective jurors.

Before discussing these contentions we shall summarize briefly the evidence as shown by the record.

Upon his arrival at 8 a. m. on Wednesday, August 24, 1955, William Allman, office manager for the company, found the window near his desk partly opened, although it was his practice to close the windows each night. A strip of adhesive tape was on the window which had apparently been used to pull the window open sufficiently to permit entry of a hand which could then open the window. Adhesive tape was readily available in a nearby first-aid building which was kept open at all times. Another window showed marks of an unsuccessful attempt at entrance. Approximately $220 from a metal tobacco can which was kept in a desk drawer was discovered to be missing shortly before 1 p. m. that afternoon. Allman had counted the funds on the previous Saturday and had last seen the money on the previous afternoon when the defendant had been given a $10 advance. Fingerprints were found upon the window which indicated that the person had grasped the window as if to pull it open. The thumbprint found on the outside of the window proved to be that of the defendant. Although the prints on the inside could not be clearly identified *in toto,* a right index fingerprint was found to have nine points of similarity with that of the defendant. Ten points are usually held to be conclusive proof of identifications according to respondent. The window had been washed on Saturday, August 20, 1955, and no other prints were found thereon.

On Monday, August 22d, the defendant, who was then employed by the company, injured one of the fingers on his right hand, not the thumb or index finger, and came into the office where a temporary bandage was applied. Then Allman took him to the hospital and, upon his return, defendant received his paycheck. He was taken home and did not

return to the mill until the afternoon of the next day when he came into the office and asked Allman for a $10 advance. The $10 was taken from among the currency in the metal tobacco can from which the remaining money was later stolen.

Allman testified that while defendant was in the office on Monday and on Tuesday, he was at his desk, which was one and a half feet from the window. At no time did he see the defendant place his hand upon the window or come near enough to do so although such action would have been evident to Allman had it occurred. The distance from the normal standing position upon the concrete porch outside of the window to the window was 70 inches. When defendant came into the office for the $10 advance he was never closer to the window than approximately 6 to 8 feet.

In explanation of his fingerprints defendant testified that while waiting for Mr. Coombs to sign his paycheck the injured hand was hurting and he held it up to alleviate the pain but was not sure that in so doing he had touched the window. Other evidence will be referred to hereinafter.

In support of his first contention defendant argues that the evidence shows that defendant was around this window while lawfully upon the premises of the company as an employee. He asserts that there is nothing to indicate that the defendant was in possession of anything that was taken from the building, and that the only evidence that could possibly connect him with the commission of the crime was the fact that he left the premises about the time of the burglary, that he gave inconsistent statements of his whereabouts, and the fingerprint found on the window. He states that there were some 66 employees who had access to this money. He argues further that the evidence is entirely circumstantial and that the law requires that it must be not only consistent with the hypothesis of guilt, but inconsistent with any other rational hypothesis.

Respondent in reply contends that there was ample evidence to support the jury's verdict and points to the following evidence appearing in the record:

(1) The defendant was completely familiar with the premises where the burglary took place and knew where the container was.

(2) Defendant had apparent opportunity to illegally enter the office and steal the money. He was proven to be and he admitted that he was in the regional area of Piercy on the

evening that the crime took place. According to Franklin Miller, a California Highway Patrolman, defendant was involved in an accident in the vicinity of Meyers Flat at 10:30 that evening. The witness took him to Garberville and from Garberville to Miranda, arriving in Miranda about midnight.

(3) Evidence that defendant attempted to provide an alibi which later proved to be false is probative of a guilty mind. Upon being arrested defendant made and signed a statement which, in effect, placed the defendant in Eureka, far from the scene of the crime. He therein stated that after going to the mill for the $10 advance on Tuesday, he went to Garberville and from Garberville to Eureka, arriving in Eureka early in the evening. The evidence of Patrolman Miller clearly proved the falsity of this statement, for the defendant was in the vicinity of Meyers Flat at 10:30 p. m. and in Miranda at midnight. On the witness stand defendant attempted to explain this inconsistency by indicating that he had been mixed up as to dates.

(4) Defendant's fingerprints appeared upon the window which had been opened to gain entry into the offices. From the position of the fingerprints upon the window the jury could readily infer that the person leaving them was the perpetrator of the crime. Respondent argues that fingerprints are the strongest evidence of identity of a person, and under the circumstances of the present case they were sufficient to identify the defendant as the criminal. Respondent argues also that defendant made a weak attempt to explain the presence of his fingerprints, but he was not sure that he had touched the window. Furthermore, Allman testified that he was at a nearby desk at all times when the defendant was in the office or near the window, and he did not see the defendant place his hand upon the window, although had such action taken place he would have been aware of it. Also, defendant's explanation does not show why or how his fingerprints were found in such a manner as to indicate a grasping of the window rather than a mere "touching" thereof.

We are unable to agree with defendant's contention that the evidence was insufficient to support the judgment. Defendant's argument is merely an argument as to the weight of conflicting evidence, and the weight of the evidence was a question for the jury to determine. It is clear that there was ample evidence to support the verdict of the jury.

Defendant's second contention that the court erred in limiting his right to examine prospective jurors to ascertain whether or not they were deputy sheriffs has substantial merit. The record shows that the trial court, in asking questions of the members of the jury panel collectively, asked the following questions:

"Have any of you occupied a position from which you might have some bias or prejudice either for or against the Defendant in this case? I'm referring particularly to the position such as deputy sheriff which might give you some bias or prejudice. Do any of you entertain any bias or prejudice by reason of anything of that sort?"

The record shows that deputies of the sheriff's office investigated the alleged crime and that the complaint was filed by a deputy sheriff. During the examination of one of the prospective jurors by defendant's counsel, the following occurred:

"Q. Are you in any way connected with the Sheriff's office——

"THE COURT: Mr. Burke, that is a question that goes solely to the advisability of exercising a peremptory challenge and will be disallowed. It's not implied bias.

"MR. BURKE: What is that, Your Honor?

"THE COURT: I said that question will be disallowed. It goes only to the question of advisability of exercising a peremptory and is not—The Court will not allow it.

"MR. BURKE: I'm not sure that I caught the full intent, Your Honor.

"THE COURT: Well, the full intent is you may examine as to cause or implied bias, actual bias, or implied bias; but to ask a question to determine whether or not it is advisable to exercise a peremptory is beyond the legal scope.

"MR. BURKE: Yes, I understand that. I didn't know the question I asked The Court particularly had reference to what I was——

"THE COURT: Well, the question is whether he was a Sheriff. Well, he might be a Sheriff and he's still a good juror. There's no implied bias by the mere fact he occupies the position of sheriff or deputy sheriff.

"MR. BURKE: I'm not so sure, Your Honor, in view of the fact the complaining witness was deputy sheriff, Your Honor.

"THE COURT: Well, the mere fact this man was a deputy sheriff, the man who swore to the complaint, doesn't raise any implied bias. You may question as to actual bias.

"MR. BURKE: Well, I wish to abide by the Court's ruling. As I understand, I may not inquire as to whether or not any of these jurors are deputy sheriffs in the County of Mendocino; is that the ruling of the Court?

"THE COURT: Yes, sir.

"MR. BURKE: Very well, Your Honor, may it be understood I have attempted to ask the question?

"THE COURT: The record will so show."

Section 1078 of the Penal Code provides:

"It shall be the duty of the trial court to examine the prospective jurors to select a fair and impartial jury. He shall permit reasonable examination of prospective jurors by counsel for the people and for the defendant."

We believe that the court erred in refusing to permit defendant's counsel to ask any of the prospective jurors if he was a deputy sheriff. The court did not ask that question and even if the court had asked such a question of the panel collectively, we believe that counsel for defendant should have been permitted to ask the question. While the purpose of said section 1078 was to expedite the examination of prospective jurors, it is stated in *People* v. *Estorga,* 206 Cal. 81, at page 84 [273 P. 575]:

". . . The purpose of the statute, however, was not to bring about expedition by depriving either the People, or defendants charged with the commission of offenses, of the right of a reasonable examination of prospective jurors, . . ."

We think the correct rule is stated in the following quotation from *Walker* v. *Greenberger,* 63 Cal.App.2d 457, at pages 463-464 [147 P.2d 105]:

"Plaintiff contends further that the trial court erred in not permitting counsel for plaintiff, in questioning the prospective jurors concerning their qualifications, to ask a certain juror or any juror what his occupation was. That contention is based upon proceedings in the trial court as shown by the following excerpt from the transcript: 'Q. [by Mr. Jones, attorney for plaintiff] Your occupation, Mr. Cunningham [a prospective juror]? The Court: That is wholly immaterial, Mr. Jones. Mr. Jones: It is very important, Your Honor. The Court: I will not permit it in my courtroom, if you have any general occupation you may ask, but the matter of occupation is wholly immaterial in a challenge for cause.' The transcript shows further as follows: 'Whereupon the same question was asked of other jurors on the examination for cause and the Court ruled that such an examination for

cause would not be permitted in that court.' The ruling was erroneous. Plaintiff was entitled to reasonable interrogation of prospective jurors as a basis for determining whether he should challenge the juror for cause or whether he should exercise his right to challenge the juror peremptorily. It is reasonable to assume that an answer to that question might have furnished a basis for further questions and answers relative to grounds for challenge for cause, which might have established a basis for such a challenge.

"Irrespective of a challenge for cause, the question was a reasonable one to aid plaintiff in determining whether to exercise a peremptory challenge. . . ."

■ While the mere fact that a prospective juror was a deputy sheriff would not of itself be a ground of challenge for cause, yet in a case where the sheriff's office has investigated the alleged crime and the complaint was sworn to by a deputy sheriff, a defendant on trial should certainly be permitted to ask and have answered the question of whether or not the prospective juror is a deputy sheriff.

■ However, the record shows that no peremptory challenges were exercised by either the People or the defendant, and we do not believe that we would be justified upon the record here to hold that the ruling of the court was reversible error. Defendant was represented by able and experienced counsel, and it would not have been difficult for such counsel to have ascertained whether or not any prospective juror was a deputy sheriff in time to have exercised a peremptory challenge. The fact that defendant's counsel exercised no peremptory challenges at all indicates that he did not believe any member of the jury panel was a deputy sheriff and the further fact that no affidavit that any of them were deputy sheriffs was filed in support of defendant's motion for a new trial, strengthens us in the belief that defendant was not prejudiced by the court's ruling.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 27, 1956.