[Crim. No. 991. Fifth Dist. Dec. 9, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVE VANCE ADAMS, Defendant and Appellant.

974

## COUNSEL

Stanley H. Tibbs, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Nelson P. Kempsky, O. Robert Simons and John H. Darlington, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), J.**—Steve Vance Adams was convicted by a jury of two counts of selling restricted dangerous drugs and one count of furnishing marijuana. He appeals from the judgment entered on the verdicts and urges two points for reversal. He challenges the jury selection procedure in Tulare County in criminal cases, which calls for all interrogation of veniremen on *voir dire* to be by the judge. Secondly, he claims that the evidence supports his defense of entrapment as a matter of law. ▇ We have determined that the latter point has no merit; and with respect to the jury selection procedure, we are of the opinion that it was error to deny defense counsel the opportunity to question the prospective jurors directly on *voir dire,* but have concluded that the error under the facts of this case was not prejudicial and does not warrant a reversal.

The trial judge, following a procedure which concededly had been adopted in Tulare County, conducted the entire *voir dire* examination and restricted counsel to submitting to the court any questions they may have desired to ask of the veniremen. No questions were submitted to the court by counsel in this instance. Had questions been submitted, the court, under the established procedure, thereupon would have determined in its discretion whether or not to ask the question or questions submitted. This procedure is commonly referred to as the federal system because it is used by many of the federal courts under rule 24 of the Federal Rules of Criminal Procedure and rule 47 of the Federal Rules of Civil Procedure (Levit, et al, *Expediting Voir Dire: An Empirical Study* (1971) 44 So.Cal.L.Rev. 916, 928-929, fn. 57).

In California this method of conducting the *voir dire* examination has been approved for use in civil cases (*Rousseau* v. *West Coast House Movers* (1967) 256 Cal.App.2d 878, 883-886 [64 Cal.Rptr. 655]).

This jury selection process as used in the federal courts has been upheld by those courts against constitutional challenge in criminal cases where the record in any particular case does not show that the defendant did not have a fair and impartial jury. (*Hamer* v. *United States* (9th Cir. 1958) 259 F.2d 274, 279-280, cert. den. 359 U.S. 916 [3 L.Ed.2d 577, 79 S.Ct. 592], and rehg. den. (1959) 359 U.S. 962 [3 L.Ed.2d 769, 79 S.Ct. 799]; *Brundage* v. *United States* (10th Cir. 1966) 365 F.2d 616, 617-618; *United States* v. *Rabb* (3d Cir. 1968) 394 F.2d 230, 233.)

In criminal cases in California state courts, the question would seem to be governed by the plain language of Penal Code section 1078, which requires the trial judge to permit reasonable examination of prospective jurors by counsel: "It shall be the duty of the trial court to examine the prospective jurors to select a fair and impartial jury. He shall permit reasonable examination of prospective jurors by counsel for the people and for the defendant."

Absent unusual circumstances which make it apparent that the word "shall" is used in a directory rather than mandatory sense, it imports compulsory rather than permissive action (*Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 634 [12 Cal.Rptr. 671, 361 P.2d 247]; *People* v. *Municipal Court* (1956) 145 Cal.App.2d 767, 775-778 [303 P.2d 375]; *Bruce M.* v. *Superior Court* (1969) 270 Cal.App.2d 566, 572-573 [75 Cal.Rptr. 881]); and when used in penal law, that construction which is more favorable to the offender will be adopted (*People* v. *Johnson* (1955) 134 Cal.App.2d 140, 144 [285 P.2d 74]). We have not been able to find anything in the statutory history of Penal Code section 1078 or in

public policy, or in the general usage of the term "shall" as used in that code section, to justify a departure from the normal and usual construction of the word as indicating mandatory rather than permissive action (*People* v. *Municipal Court, supra,* 145 Cal.App.2d 767, 775-778).

That direct questioning by counsel must be permitted is consistent with decisional law commencing with a number of cases which were rendered by the Supreme Court shortly after the amendment to Penal Code section 1078 in 1927. (*People* v. *Coen* (1928) 205 Cal. 596, 605-606 [271 P. 1074]; *People* v. *Estorga* (1928) 206 Cal. 81, 84-85 [273 P. 575]; *People* v. *Barrett* (1929) 207 Cal. 47, 49-50 [276 P. 1003]; *People* v. *Brown* (1929) 207 Cal. 172, 178-179 [277 P. 320]; *People* v. *Lazarus* (1929) 207 Cal. 507, 511-512 [279 P. 145]; *People* v. *Ranney* (1931) 213 Cal. 70, 76 [1 P.2d 423].) In *People* v. *Estorga, supra,* at pages 84-85, the court said: "We have noted a tendency on the part of trial judges throughout the state to place too literal an interpretation upon what is the 'duty of the trial court to examine prospective jurors,' and to pay too little attention to the right of a 'reasonable examination of prospective jurors by counsel' for the People and, particularly, counsel for the defendant. The section is one of those passed by the legislature on the recommendation of the commission for the reform of criminal procedure created by the legislature in 1925, the purpose of the enactment, of course, being to expedite the trial of criminal causes, and to correct the abuse which has grown up in this jurisdiction, through tedious and unnecessary examination of prospective jurors in criminal cases. It has become a matter of common knowledge in this state that the efforts on the part of counsel for defendants in criminal cases have developed into attempts to disqualify jurors, rather than to seek to ascertain their qualifications. The purpose of the statute, however, was not to bring about expedition by depriving either the People, or defendants charged with the commission of offenses, of the right of a reasonable examination of prospective jurors, and the legislature was particular to provide for that right. The collective examination of the entire panel in the body of the courtroom, and by a series of questions which may, for the greater part, be answered by silence on the part of the jurors, and under circumstances like those in the case at bar, in which neither the People nor the defense had any opportunity to observe the jurors as they answered, is, in our opinion, such a wide departure from the due course and conduct of an examination as to call for the unqualified disapproval of this court."

In *People* v. *Barrett, supra,* 207 Cal. 47, following the principles of *Estorga,* the Supreme Court's reversal of a criminal conviction was grounded on the trial court's refusal to permit counsel to question the jurors on *voir dire.*

In *People* v. *Brown, supra,* 207 Cal. 172, the court approved a procedure wherein the trial judge performed the initial examination and accepted questions from counsel to put to the jury. However, if a challenge for cause was interposed, counsel was permitted to examine the veniremen directly.

In *People* v. *Lazarus, supra,* 207 Cal. 507, the court approved a procedure wherein the court asked many initial questions and then permitted counsel to inquire of jurors individually. In *People* v. *Coen, supra,* 205 Cal. 596, and *People* v. *Ranney, supra,* 213 Cal. 70, it was recognized that the court has reasonable discretion to foreclose certain specific areas of inquiry in the interests of time and expediency and to prevent improper questions.

There appears to be no case which has disapproved the interpretation of the requirements of Penal Code section 1078 set forth in *Estorga* and the other cases just referred to. The many cases which have expressed themselves concerning *voir dire* procedures in criminal cases are entirely consistent therewith, in that it appears in each case counsel was afforded some opportunity to examine individually each of the prospective jurors. It is also apparent that in none of the cases has counsel been limited to submitting written questions to the judge. (*People* v. *Terry* (1964) 61 Cal.2d 137, 147 [37 Cal.Rptr. 605, 390 P.2d 381]; *People* v. *Love* (1960) 53 Cal.2d 843, 851-852 [3 Cal.Rptr. 665, 350 P.2d 705]; *People* v. *House* (1969) 268 Cal.App.2d 922, 924 [74 Cal.Rptr. 496]; *People* v. *Deriso* (1963) 222 Cal.App.2d 478, 486 [35 Cal.Rptr. 134]; *People* v. *Boorman* (1956) 142 Cal.App.2d 85, 90 [297 P.2d 741]; *People* v. *Harrington* (1955) 138 Cal.App.2d Supp. 902, 904 [291 P.2d 584]; *People* v. *Chambers* (1937) 22 Cal.App.2d 687, 705 [72 P.2d 746]; *People* v. *Canales* (1936) 12 Cal.App.2d 215, 219 [55 P.2d 289].)

Respondent relies upon *People* v. *Parker* (1965) 235 Cal.App.2d 86 [44 Cal.Rptr. 900]. That opinion is not inconsistent with the conclusions herein expressed. It is not entirely clear from the text of the opinion that counsel's examination of the jurors was totally truncated; it does appear that certain areas of inquiry were foreclosed. Further, the court rather clearly recognizes the right of counsel to directly examine the jurors. "On the other hand, counsel should not be stifled in detailed examination of panel members to develop possible grounds of challenge for cause (see Witkin, *op. cit.,* § 409, pp. 408-409), and under some circumstances to preclude inquiry into the jurors' *willingness* to apply legal principles may be a denial of the statutory right of reasonable examination. [Citation.]

"·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

". . . It might have been error, although not necessarily prejudicial

error, to preclude counsel from some appropriate form of inquiry into the jurors' willingness to pursue their obligations. Counsel could not, however, insist on the court's accepting this line of inquiry in the particular form proposed by him. . . ." (At pp. 98-99.)

We agree with the wisdom of the provisions of Penal Code section 1078[1] and decisional precedents applicable to criminal cases in mandating the trial courts to permit counsel reasonable direct *voir dire* examination of prospective jurors.

In the haste for judicial reform and the justifiable concern over judicial delay and undue consumption of time in the selection of juries, we must not overlook the basic reasons why the *voir dire* examination exists. Its overriding purpose is to insure that the jury finally impaneled is a fair and impartial one (U.S. Const., Amend. VI; *Witherspoon* v. *Illinois* (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770]). This constitutional right to a jury trial is applicable to the states through the Fourteenth Amendment (*Duncan* v. *Louisiana* (1968) 391 U.S. 145, 147-155 [20 L.Ed.2d 491, 494-499, 88 S.Ct. 1444, 1446-1551]). Every experienced trial counsel knows that it is an unrealistic fiction to assume that a series of generalized questions asked by a trial judge of the jury panel as a whole can as effectively probe the recesses of a juror's mind and determine his or her real attitudes and prejudices as can individual questions propounded by trial counsel. An attorney who is fully acquainted with his case and actively pursuing a determination as to the individual juror's actual state of mind is in a superior position to pursue the interrogation in particular areas; it is essential, however, that the trial judge be given and that he actually exercise his discretion to limit such examination to prevent abuses. As stated by the authors of the article *Expediting Voir Dire, supra,* 44 So.Cal.L.Rev. 916 at page 950: "One criticism often raised about the judge conducting the examination in its entirety is that only the attorney, fully versed in every nuance of his case, can successfully sense the subtle and inarticulable factors that might cause a juror to base his vote on anything other than reason

---

[1]We note the California Judicial Council has adopted a new section 8 of the Standards of Judicial Administration, effective January 1, 1972, which details the procedures applicable in civil cases involving *voir dire* examination of prospective jurors. While the principal burden of the examination is placed upon the trial judge, the trial courts are directed to permit trial counsel for good cause to inquire directly of veniremen within limits prescribed by the trial judge. The trial court is specifically enjoined "When a possible bias or prejudice has been disclosed during the initial examination and in cases involving unusual factual or legal issues, the judge should liberally exercise his discretion in allowing further examination of the prospective jurors." It is further noted that the Judicial Council has recommended appropriate amendments to Penal Code section 1078 in order that a procedure similar to the *voir dire* procedure set forth for civil cases may be adopted by the Judicial Council for use in criminal cases.

and fact. Only the attorney, in the heat of examination, can pick out a seemingly innocuous answer, seize on it, and pursue the line to its conclusion, on the basis of which a determination whether or not to challenge the juror may be made. This argument applies with even greater force to the exercise of peremptory challenges." (Fn. omitted.)

It is commonplace knowledge that there have been extensive abuses by counsel on *voir dire* examination by engaging in tedious and time-wasting questions, which are seemingly interminable and repetitious and designed in many instances to accomplish purposes other than the legitimate objects of a reasonable *voir dire* examination. The necessity of eliminating huge case backlogs, of obtaining effective and productive dispatch of court business, of avoiding expense and wasted court time, of maintaining public confidence in our court system, and of not wasting the time and energy of jurors, dictates that such wearisome, time-wasting abuses be eliminated.

In our view, however, the delays and abuses which have resulted in the jury selection process for the most part have not been caused by permitting trial counsel a reasonable opportunity to examine the juror directly, but by trial judges having failed to perform their duty and exercise their authority to prevent abuses by proper control over the extent and breadth of trial counsel's examination. The trial judge has the duty and the authority to prevent abuses and should perform his duty and exercise his authority by prohibiting exploration into improper areas and subjects, such as those wherein counsel is attempting to indoctrinate the jury, to instruct on matters of law, to cover subjects and areas already adequately covered by the court in its general examination, to precondition the prospective jurors to a particular result, to argue the case, to comment on matters pertaining to the personal lives of the parties or their attorneys, or to question jurors regarding the meaning of words or phrases or the pleadings.

In the case at bench, though it was error to not have permitted counsel to have questioned the prospective jurors directly, we are constrained to the conclusion that it was not prejudicial. Appellant's counsel was familiar with the procedure prior to the trial and was not taken by surprise. In his questions to the panel as a whole, the trial judge was very thorough and covered a broad field of inquiry, including the names of prospective witnesses, the length of the trial, acquaintanceship of the jurors with the defendant or attorneys or anyone involved in the events surrounding the alleged criminal acts, familiarity with the fact of arrest or charge or of the incident, the fact that the arrest or charge was not evidence of guilt, the relation of the jurors to any law enforcement officer, whether or not they or any member of their family had had a serious crime committed against them, advice regarding the fact that it was their job to determine

who was telling the truth and who wasn't, and whether or not they would follow the legal instructions the court would give them at the conclusion of the trial, whether or not there was any reason at all why they would not be fair and impartial jurors, whether or not they had any scruples against sitting on a jury or judging their fellow man, an admonition that they should keep an open mind until the case was finally submitted to them, advice as to the presumption of innocence, the burden of proof, and inquiry as to their occupation, and their marital status.

At the conclusion of the judge's examination, he asked counsel if either of them had any additional questions to submit. None was submitted, indicating satisfaction with those asked. No questions that the judge had asked were objected to. Defense counsel exercised four peremptory challenges. He had six more that were not used.

Appellant had suggested no areas of inquiry in which he would like to have inquired further or that were not covered by the trial judge, nor is there any suggestion that any particular person or persons on the jury were in fact biased or unfair. Finally, the appellant took the stand and admitted the offenses charged. His guilt was clear. His only defense was that of entrapment, which the jury rejected. We do not believe that the result would have been different had the judge permitted defense counsel to question the prospective jurors directly on *voir dire* (*People* v. *Estorga, supra,* 206 Cal. 81; *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]).

■ The defense of entrapment was submitted to the jury under proper instructions. Had the jury found for the appellant, there would have been substantial evidence in the record to support the verdict of acquittal. There was also substantial evidence to support the jury's conclusion that the appellant was not the victim of an entrapment. Such evidence is found in the testimony of the undercover narcotics agent with respect to statements made by the appellant, appellant's familiarity with drugs, and his knowledge of drug traffic and drug jargon; all of which is buttressed by appellant's own incredulous statements with respect to how he obtained the drugs. From this record the jury was free to draw a rational inference that appellant was not an innocent person seduced into the sales by a false friend, but that he was an experienced drug pusher and that the criminal intent to commit the offense originated in his own mind (*People* v. *Moran* (1970) 1 Cal.3d 755, 760 [83 Cal.Rptr. 411, 463 P.2d 763]; *People* v. *Sweeney* (1960) 55 Cal.2d 27, 49 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Terry* (1955) 44 Cal.2d 371, 372-373 [282 P.2d 19]; *People* v. *Braddock* (1953) 41 Cal.2d 794, 802 [264 P.2d 521]; *People* v. *Gossett* (1971) 20 Cal.App.3d 230, 233 [97 Cal.Rptr. 528]). ■ As stated in *People* v.

*Moraga* (1966) 244 Cal.App.2d 565, at page 568 [53 Cal.Rptr. 563]: "An appellate court will not draw an inference contrary to that drawn by the trial court if there is sufficient substantial evidence to support the lower court [citation], and Officer Noriega's testimony . . . provided such substantial evidence." and in *People* v. *Sweeney, supra,* 55 Cal.2d 27, at page 51: "The choice of which inference is to be drawn from the facts, where more than one reasonable inference is possible, is the function of the jury."

The judgment is affirmed.

Gargano, Acting P. J., and Franson, J.,* concurred.

A petition for a rehearing was denied December 29, 1971, and respondent's petition for a hearing by the Supreme Court was denied February 23, 1972.

*Assigned by the Chairman of the Judicial Council.