[Civ. No. 22269.   First Dist., Div. Three.   Mar. 18, 1966.]

LAWRENCE B. SWEET, Plaintiff and Respondent, v. REUBEN STUTCH, M.D., et al., Defendants and Appellants.

Peart, Baraty & Hassard and Robert D. Huber for Defendants and Appellants.

Philander Brooks Beadle and Marcus & Bresnahan for Plaintiff and Respondent.

DRAPER, P. J.—Defendant doctors appeal from judgment on jury verdict in favor of plaintiff patient.

Plaintiff suffered a crushing type of injury when a crane's counterweight struck him in the area of the left rear rib cage. This injury occurred in the course of employment, and is in no way chargeable to defendant doctors. They did, however, treat him when he was hospitalized for it. After some 10 days, they applied traction by running a rope from a halter under his chin, over pulleys at the head of his hospital bed, to a 5-pound metal weight tied to the rope. Some eight hours later, at about 5:30 p.m. the knot failed and the weight fell to the floor. Plaintiff testified that he "snapped forward," "saw a kind of blinding light," and lost consciousness. There is no question that plaintiff's total injury was severe, including a cervical whiplash, and required extended hospitalization and treatment. The question was whether the first injury caused it all, or whether the hospital incident contributed to the ultimate result. The jury impliedly found the latter, and defendants contend the finding is unsupported by the evidence.

One suffering from the effects of an earlier injury may recover from a later tortfeasor for damages resulting from additional injury or from aggravation of the preexisting condition (*Ash* v. *Mortensen,* 24 Cal.2d 654 [150 P.2d 876]; *Rideau* v. *Los Angeles Transit Lines,* 124 Cal.App.2d 466, 471-472 [268 P.2d 772]; *Smith* v. *Schumacker,* 30 Cal.App.2d 251, 263 [85 P.2d 967]).

Plaintiff's wife testified that when Dr. Friedman, one of the defendants, first saw plaintiff after the traction incident, he said "My God, I wouldn't have had this happen for the world" and "this will put you back quite a while." Plaintiff testified that on other occasions Dr. Friedman told him, of this incident, "It's going to set you back a lot." Dr. Friedman, before the traction incident, made a written report to a compensation carrier estimating plaintiff's disability duration

at one month. Three weeks after the traction incident, he reported that some new difficulties had arisen, reciting symptoms which he admits customarily accompany a whiplash injury, and reported that ''in light of the numerous complications that occurred, hospitalization may be prolonged for another two and possibly three weeks.'' An expert called by the defense testified that the noise of the weight falling to the floor could cause a reflex action in which the patient would jerk forward, with possible (though unlikely) whiplash injury resulting. Nurses' notes in the hospital record show complaints of cervical pain for the first time after the traction incident.

■ Much of this evidence is contradicted. But we must resolve conflicts in respondent's favor, and give him the benefit of any reasonable inference (3 Witkin, Cal. Procedure (1954) 2245). So viewed, the evidence sustains the conclusion that plaintiff suffered either new injury or aggravation of the old one in the traction incident.

■ In some circumstances, expert testimony may be required to show that aggravation of an existing injury was proximately caused by a second occurrence (*Deckard* v. *Sorenson,* 177 Cal.App.2d 305, 308 [2 Cal.Rptr. 121]). Admissions against interest, however, are direct evidence of the fact admitted (*Lane* v. *Pacific Greyhound Lines,* 26 Cal.2d 575, 581 [160 P.2d 21]; *Taylor* v. *Sanford,* 203 Cal.App.2d 330, 343-344 [21 Cal.Rptr. 697]). Dr. Friedman's admissions are those of an expert, and even if *Deckard* is applicable here, meet its requirement.

■ Defendants assert misconduct in plaintiff's *voir dire* of the jurors as to financial interest in an insurer. Most jurors were asked whether they owned securities of a named insurer, which defendants concede is proper. (*Stevenson* v. *Link,* 128 Cal.App.2d 564, 570 [275 P.2d 782].) But some four jurors were asked whether they owned stock in any other company which writes ''liability insurance'' or ''malpractice insurance'' for doctors. Defendants argue that these questions constitute misconduct (*Swift* v. *Winkler,* 148 Cal.App.2d 927, 930-931 [307 P.2d 666]). But both *Stevenson* and *Swift* make clear that the line of misconduct is crossed only when the questions are designed to implant in the minds of the jury the fact that the defendants are insured. We cannot say that this line was crossed, particularly in light of the modern perspective of this problem (*Causey* v. *Cornelius,* 164 Cal. App.2d 269 [330 P.2d 468]).

■ One other claim of misconduct is made. On *voir dire* of a juror, plaintiff's counsel in a "question," said "You realize, do you not, that . . . there is always a problem caused by the well-known reluctance of doctors to testify against" one another? The court admonished the jury that statements of counsel are not evidence, and sustained objection to the question. It was then reframed to ask "Have you ever had any experience . . . with . . . whether or not it is difficult to obtain the testimony of doctors in cases in which another doctor is alleged to have been careless?" Objection to this question was overruled. It was asked in comparable form of two other panel members. In view of the court's repeated admonition that statements of counsel are not evidence, we do not find prejudicial misconduct in presenting this question to three of the many prospective jurors questioned. Nor did plaintiff's attempt to reenter this field in argument cause prejudice, since the jury was again admonished and counsel was directed to proceed to another argument.

We do, however, note the waste of valuable court time involved in such excursions. *Voir dire* of the jury is not the time for premature presentation of evidence, nor for the even more frequent attempts at preinstruction. Neither instruction nor the giving of evidence is the function of counsel. The immediate advantage of such diversions is questionable, since opposing counsel usually can equal or exceed the initial distractions from the true purpose of jury trial. The larger interest of the trial bar as a whole, and of equally earnest litigants who await a forum for their own trials, is frustrated by such dissipation of court time. We cannot expect the Legislature to provide, or the people to pay for, additional courts to provide the leisure for overlong *voir dire* exercises. A full court day was required to choose a jury here. Unfortunately, the expenditure of so much time is not uncommon, although an hour frequently should suffice. The purpose of the *voir dire* is but to insure choice of 12 jurors who are fair and who have no preconceived notions of the facts or the parties. Each trial judge has a broad power, on his own motion, to curb such examination. It is to be hoped that judges can develop a uniform approach to keep *voir dire* within reasonable limits, to the ultimate benefit of lawyers, litigants, and jurors alike.

Judgment affirmed.

Salsman, J., and Devine, J., concurred.