[Crim. No. 16261. In Bank. Feb. 8, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN IRWIN CROWE, Defendant and Appellant.

**818**

COUNSEL

Velma E. Williams, under appointment by the Supreme Court, for Defendant and Appellant.

Wilbur F. Littlefield and Herbert M. Barish as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and William R. Pounders, Deputy Attorney General, for Plaintiff and Respondent.

D. Lowell Jensen, District Attorney (Alameda), as Amicus Curiae.

OPINION

**TOBRINER, J.**—Defendant John Irwin Crowe appeals from a conviction, following jury verdict, of assault by means of force likely to produce great bodily harm (Pen. Code, § 245, subd. (a)) and robbery (Pen. Code, § 211). The jury determined the robbery to be of the second degree. (Pen. Code, § 211a.)

The principal issue of the case turns on defendant's contention that the trial court's conduct of the *voir dire* violated Penal Code section 1078. *Voir dire* does, indeed, often entail a protracted undertaking by counsel that is designed for tactical advantage rather than for the elimination of an undesirable juror. To avoid such misuse, the trial court itself in the instant case examined the jurors with the assistance of written questions submitted by counsel. We shall explain that section 1078 permits this method of examina-

tion; counsel, instead of directly questioning the prospective juror, submits to the court questions, which, if found within the scope of reasonable examination, can be propounded by the court to the jurors.

In approving such procedure we point out that *voir dire,* designed as a device to weed out unsuitable jurors, may, if over-extended by counsel, be self-destructive. If *voir dire* is burdened with the weight of excess rococo examination, the trial structure itself can be endangered. We believe that section 1078 permits the *voir dire* to be left to the discretion of the trial judge, who among other methods, can put the questions to the jurors, aided by counsel.

We likewise reject defendant's contentions that the court prejudicially erred in refusing to put to the jurors certain additional questions requested by defense counsel, that defendant was denied his right to 10 peremptory challenges, and that the evidence was insufficient to support the verdict. Finding no prejudicial error, we affirm the defendant's conviction.

1. *In undertaking the entire examination of prospective jurors itself, assisted by questions submitted by counsel, the trial court did not deny counsel for defendant his right to reasonable examination of jurors as provided in Penal Code section 1078.*

Penal Code section 1078 states that "It shall be the duty of the trial court to examine the prospective jurors to select a fair and impartial jury. He shall permit reasonable examination of prospective jurors by counsel for the people and for the defendant." The issue before us is whether the procedure employed by the trial court in the *voir dire* of the jury in the present case comports with the requirements of section 1078.

We summarize the manner in which the court conducted the *voir dire.* Prior to trial the court notified counsel that it would not permit direct *voir dire* by counsel. Defense counsel then submitted to the court a written list of twelve general and six individual questions delineating the subject matter that he wished to be covered on *voir dire.* The court tentatively seated 12 jurors, explained the nature of the case, and advised the jurors that the court bore the duty to examine them to select a fair and impartial panel. After giving general instructions on the presumption of innocence and reasonable doubt, the court introduced defendant and both counsel, and stated the names of prospective witnesses. The jurors indicated that they were not acquainted with defendant, counsel, or the witnesses. After describing generally the duties and functions of the jurors, the court examined each juror as to his jury experience, ability to follow the law, racial prejudice, general area of residence, occupation, marital and family status, and relationships to law enforcement agencies. The judge asked each juror whether he had been

charged with committing an assault or robbery or had been a victim of such an offense. The court then inquired into the consequences to the juror from involvement in a lengthy trial; finally, the court asked each juror generally whether that juror knew of any reason why he could not be fair and impartial.

After concluding this examination, the court asked counsel to approach the bench, and the following colloquy occurred:

"THE COURT: All right, now, are there any other questions you want the Court to ask the jurors?

"MR. FIORE [defense counsel]: Your Honor, I would like to have the opportunity to ask some questions myself. I am accorded that right under section 1078 of the Penal Code.

"THE COURT: What questions do you want to ask?

"MR. FIORE: I wanted to ask the young lady, Mrs. Meals, if the fact that she is a Negro and the only one on the panel if that might in any way place her in a compromising position if she were to be chosen to remain as a juror.

"I also want to delve a little further into the nature of the occupation of the husbands of three other jurors; namely, Mrs. Rotman, Mrs. Klobucar and Mrs. Hupp.

"I also want to ask some other general questions of all of the jury panel relative to—

"THE COURT: State them.

"MR. FIORE: The fact that my client is in custody presently, if that would have any effect; that is, if they would consider that he is more likely to be guilty than innocent because he is in custody.

"I want to ask if they all understand the fact that he is in custody because he cannot afford bail.

"I also want to ask specific questions of individual jurors as to whether or not they have participated in a situation where they were asked to identify any individual. In other words, if they were ever asked, as an eye witness, to make an identification; if they believed that an individual can be mistaken in an identification, and questions relative to the identification of individuals.

"These would be substantially the questions I would like to ask personally. Depending upon their answers there may be others.

"THE COURT: All right. Mrs. Meals answered that the question I asked

of Mrs. Day, concerning whether or not there were any prejudice for or against the defendant by reason of his color.

"Your motion is denied."

The court then permitted counsel to exercise peremptory challenges. After the dismissal of each challenged juror, the court questioned his replacement in the same fashion as it had questioned the original 12. Following the completion of the jury selection defense counsel again argued that the procedure employed by the court denied defendant the rights accorded him under Penal Code section 1078.

We begin our analysis of defendant's argument with an account of the history of jury *voir dire* in California, and of the enactment and interpretation of Penal Code section 1078. This history, we believe, will demonstrate that although section 1078 confers upon counsel a right to reasonable examination of jurors, neither that section, nor any of the cases construing it, require that such examination be conducted directly by counsel without the intervening supervision of the trial judge. To the contrary, the cases construing section 1078 illustrate that the court will uphold any method of *voir dire* which results in reasonable examination of prospective jurors, submission of proposed questions by counsel to the court which, after eliminating improper or duplicative queries, itself interrogates the prospective jurors.

The right of counsel to examine a prospective juror before challenge was established by court decision in 1855.[1] (*People* v. *Backus* (1855) 5 Cal. 275.) Many years later, however, in *People* v. *Edwards* (1912) 163 Cal. 752, 753 [127 P. 58], the court observed that "The records of the cases appealed to this court in which rulings made while impaneling a jury have been involved, indicate that there is an increasing tendency to prolong the proceedings inordinately by allowing counsel on either side to indulge in tedious examination of jurors, apparently with no definite purpose or object in view, but with the hope of eliciting something indicating the advisability of a peremptory challenge, and that the supposed privilege of doing this has been greatly abused." In the hope of curbing this abuse *Edwards* overruled past decisions and held that counsel could not *voir dire* a juror as to matters immaterial to a challenge for cause.[2]

---

[1] At common law, *voir dire* of a prospective juror was permitted only after interposition of a challenge for cause. (R. Miller, Civil Procedure of the Trial Court in Historical Perspective (1952) pp. 289-291.) In Britain and Canada, where such a restriction is still the rule, it is very unusual for an attorney to *voir dire* a juror. (*Id.* at p. 289.)

[2] Accord: *People* v. *Rigney* (1961) 55 Cal.2d 236, 244 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186]; *People* v. *Ferlin* (1928) 203 Cal. 587, 598 [265 P. 230]; *Rousseau* v. *West Coast House Movers* (1967) 256 Cal.App.2d 878, 882 [64 Cal.

Despite the *Edwards* decision, the problem of lengthy and inordinate *voir dire* continued, and in 1927 the Commission for the Reform of Criminal Procedure in California recommended the enactment of a statute to govern the procedure. This proposed statute was to read as follows: "It shall be the duty of the trial court to examine the prospective jurors and to select a fair and impartial jury. He *may*, in his discretion, permit reasonable examination of prospective jurors by counsel for the people and for the defendant."[3] (Italics added.) The Legislature, however, rejected the commission's proposal to place *voir dire* entirely in the discretion of the trial court, and instead enacted the present section 1078,[4] which in the second sentence, changed the word "may" to "shall" and eliminated "in his discretion." As we have noted the statute now reads: "It shall be the duty of the trial court to examine the prospective jurors to select a fair and impartial jury. He *shall* permit reasonable examination of prospective jurors by counsel for the people and for the defendant." (Italics added.)

Shortly after the enactment of section 1078, this court decided several cases construing that section. Both parties rely upon these cases: defendant asserts that the decisions establish his absolute right to direct examination by counsel; the Attorney General maintains that they show that the provision is not mandatory but permissive and that the court may refuse any oral examination by counsel. Even assuming it is mandatory, however, the Attorney General argues that reasonable examination by counsel, does not mean that such "reasonable examination" must be orally conducted directly by counsel.

In the first case urged in support of defendant's position that reached this court, *People* v. *Coen* (1928) 205 Cal. 596 [271 P. 1074], the trial judge himself questioned each juror. Defense counsel asked that juror Smith be queried as to whether he had read various newspaper accounts of the case; the judge refused to permit the question. The Supreme Court held that the judge erroneously restricted the examination of juror Smith, but found the error not prejudicial because the judge had examined all other jurors on newspaper publicity, and defendant did not excuse Smith by peremptory challenge.

Defendant relies primarily upon two subsequent cases, *People* v. *Estorga*

Rptr. 655]; *People* v. *Deriso* (1963) 222 Cal.App.2d 478, 486-487 [35 Cal.Rptr. 134]; contra: *People* v. *Boorman* (1956) 142 Cal.App.2d 85, 91 [297 P.2d 741]; *Walker* v. *Greenberger* (1944) 63 Cal.App.2d 457, 463-464 [147 P.2d 105]. Resolution of this conflict is not essential to the disposition of the present case.

[3]Report of the Commission for the Reform of Criminal Procedure in California (1927) page 19.

[4]Statutes 1927, chapter 605, page 1039, section 1.

(1928) 206 Cal. 81 [273 P. 575] and *People* v. *Barrett* (1929) 207 Cal. 47 [276 P. 1003]. In *Estorga* the trial judge questioned the jury panel collectively, inquiring into whether they harbored prejudice and taking the panel's silence as a negative reply. When defense counsel requested permission to inquire into the individual backgrounds of the jurors, the judge refused. Holding this refusal erroneous, the Supreme Court set out to explain the purpose of the 1927 enactment; "We have noted a tendency on the part of trial judges throughout the state to place too literal an interpretation upon what is the 'duty of the trial court to examine prospective jurors,' and to pay too little attention to the right of a 'reasonable examination of prospective jurors by counsel' for the People and, particularly, counsel for the defendant. . . . The purpose of the statute, however, was not to bring about expedition by depriving either the People, or defendants charged with the commission of offenses, of the right of a reasonable examination of prospective jurors, and the Legislature was particular to provide for that right." (206 Cal. at p. 84.) Nevertheless, in *Estorga,* the overwhelming evidence of defendant's guilt led the court to hold the error nonprejudicial.

In *People* v. *Barrett* (1929) 207 Cal. 47 [276 P. 1003], the court again condemned the practice of collective examination of the jury panel, and this time the close balance in the evidence led to a finding of prejudicial error. Finally, in *People* v. *Ranney* (1931) 213 Cal. 70 [1 P.2d 423], the court found reversible error when a trial judge refused to permit counsel to inquire of a juror whether he would be prejudiced against defendant because of defendant's prior convictions.

To counter the cases cited by defendant, the Attorney General relies, among other decisions, upon *People* v. *Brown* (1929) 207 Cal. 172, 178 [277 P. 320]. In *Brown,* the trial judge, following the common law procedure of permitting examination of a juror only after a challenge for cause, conducted the interrogation himself but permitted counsel to suggest questions; whenever a challenge for cause was interposed and denied, the challenging attorney was allowed to conduct the *voir dire* of the challenged juror. We held that "[t]his method of examining jurors has been provided for by the recent statute, section 1078 of the Penal Code . . . and where fairly conducted has been approved by this court." (207 Cal. at p. 178.) *People* v. *Lazarus* (1929) 207 Cal. 507, 511-512 [279 P. 145], also supports the right of the trial court to *voir dire* the jurors before entertaining questions from counsel.

This review of the legislative history of section 1078, and of the cases interpreting it, confirms the fact that the section confers a right to reasonable examination of prospective jurors; denial of this right has been held to be

error in *People* v. *Coen* (1928) 205 Cal. 596 [271 P. 1074]; *People* v. *Estorga* (1928) 206 Cal. 81 [273 P. 575]; *People* v. *Barrett* (1929) 207 Cal. 47 [276 P. 1003], and *People* v. *Ranney* (1931) 213 Cal. 70 [1 P.2d 423]. We must therefore reject the Attorney General's contention that the second sentence of section 1078, which states that the court *"shall"* permit reasonable examination of jurors by counsel, does not require the court to conduct a reasonable examination of prospective jurors by counsel. The mandate, however, directs the court to "permit a *reasonable* examination" by counsel. A reasonable examination can embrace a procedure by which counsel submits questions to the judge who, in turn, renders them to the prospective juror. Nothing in the legislative history of section 1078 or in the cases interpreting it compels the conclusion that direct questioning by counsel is essential to comply with the mandate of section 1078; we note that three decisions, *People* v. *Coen* (1928) 205 Cal. 596, 605 [271 P. 1074] (by implication), *People* v. *Brown* (1929) 207 Cal. 172 [277 P. 320], and *People* v. *Lazarus* (1929) 207 Cal. 507 [279 P. 145], approved methods of *voir dire* in which the trial court, utilizing questions suggested by counsel, undertook the principal examination of jurors itself, relegating direct examination by counsel to a secondary role.

Subsequent cases have upheld the right of counsel to a reasonable examination of prospective jurors, placing limits upon the purpose and content of counsel's inquiry. ■ *Rousseau* v. *West Coast House Movers* (1967) 256 Cal.App.2d 878, 882 [64 Cal.Rptr. 655], sets out the limits on the scope of *voir dire:* "Such examination is not for the purpose of determining the exercise of peremptory challenges. . . . Neither is it a function of the examination of prospective jurors to educate the jury panel to the particular facts of the case, to compel the jurors to commit themselves to vote a particular way, to prejudice the jury for or against a particular party, to argue the case, to indoctrinate the jury, or to instruct the jury in matters of law."[5] On the other hand, if counsel's proposed question is reasonable and falls within these limits, it is error for the trial court to refuse to allow that question to be put to the juror. (See *People* v. *Terry* (1964) 61 Cal.2d 137, 147 [37 Cal. Rptr. 605, 390 P.2d 381]; *People* v. *Boorman* (1965) 142 Cal.App.2d 85, 89-90 [297 P.2d 741]; *People* v. *Love* (1960) 53 Cal.2d 843, 852, fn. 1 [3 Cal.Rptr. 665, 350 P.2d 705] (dictum).)

We find no statutory prohibition of a procedure, such as that followed

---

[5]See also *People* v. *Mitchell* (1964) 61 Cal.2d 353, 366 [38 Cal.Rptr. 726, 392 P.2d 526]; *People* v. *Love* (1960) 53 Cal.2d 843, 852 [3 Cal.Rptr. 665, 350 P.2d 705]; *People* v. *Parker* (1965) 235 Cal.App.2d 86, 98 [44 Cal.Rptr. 900]; *People* v. *Deriso* (1963) 222 Cal.App.2d 478, 486-487 [35 Cal.Rptr. 134]; *People* v. *Jefferson* (1948) 84 Cal.App.2d 709, 711 [191 P.2d 487]. Judge Title, in *Voir Dire Examination of Jurors in Criminal Cases* (1962) 43 State Bar J. 70, 76-87, presents a detailed analysis of the bounds of proper *voir dire* examination.

in this case, which channels *voir dire* examination through the trial judge. We approve this method of curtailing the inordinate time consumed in the process of the selection of jurors.[6] Thus appellate cases have referred to "the waste of valuable court time involved" (*Sweet* v. *Stutch* (1966) 240 Cal. App.2d 891, 894 [50 Cal.Rptr. 9]) and to the "tedious, irksome and time-wasting prolongation of individual questioning of individual jurors by one side and then the other" (*People* v. *Parker* (1965) 235 Cal.App.2d 86, 98 [44 Cal.Rptr. 900].) In *People* v. *Adams* (1971) 21 Cal.App.3d 972, 979 [99 Cal.Rptr. 122], the court observed that "It is commonplace knowledge that there have been extensive abuses by counsel on *voir dire* examination by engaging in tedious and time-wasting questions, which are seemingly interminable and repetitious and designed in many instances to accomplish purposes other than the legitimate objects of a reasonable *voir dire* examination."

As *People* v. *Adams* observed, the problem of undue consumption of time conjoins with the problem of abuse of *voir dire* by counsel seeking a tactical advantage.[7] Maxwell, *The Case of the Rebellious Juror* (1970) 56 A.B.A.J. 838, 841-842, summarizes the vice of using the *voir dire* as a ploy to gain tactical advantage: "The average trial manual bows in passing to the use of *voir dire* in obtaining a jury that is fair to both sides. Then it emphasizes that its greatest use is, in the words of the notorious Irish comic, 'Mr. Dooley, to get a jury that is 'more fair to wan side than the other.' Advice to the neophyte abounds in stratagems by which he may prejudice the jurors in favor of himself, his client and his case before the actual trial has started. Every field of human endeavor from psychiatry to animal magnetism and phrenology is to be used in observing the juror as the lengthy questioning proceeds. Thus, rapport can be established. If not, a challenge for cause, if possible; or more likely a peremptory based on intuition."[8]

---

[6]Levit, Nelson, Ball & Chernick, *Expediting Voir Dire: An Empirical Study* (1971) 44 So.Cal.L.Rev. 916, 922; see R. Miller, Civil Procedure of the Trial Court in Historical Perspective (1952) p. 297; Tone, *Voir Dire, New Supreme Court Rule 24-1: How It Works* (1958) 47 Ill.Bar J. 140, 143; Comment (1962) 36 So.Cal. L.Rev. 89, 96.

[7]See Adkins, *Jury Selection: An Art? A Science? or Luck?* (Dec. 1968-Jan. 1969) 5 Trial 37; American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (1968) p. 64; R. Miller, Civil Procedure of the Trial Court in Historical Perspective (1952) p. 297; Title, *Voir Dire Examination of Jurors in Criminal Cases* (1968) 43 State Bar J. 70, 71; Tone, *Voir Dire, New Supreme Court Rule 24-1: How It Works* (1958) 47 Ill.Bar J. 140, 143.

[8]Comment (1966) 11 S.D.L.Rev. 306, 321-362 cites a number of trial manuals recommending the use of *voir dire* to obtain a tactical advantage, and summarizes the tactics they suggest; see also Tone, *Voir Dire, New Supreme Court Rule 24-1: How It Works* (1958) 47 Ill.Bar J. 140, 143. We note also with dismay the suggestion

The procedure which we sanction in the instant case coincides with the federal method now followed. This federal method dates from the recommendation, in 1924, of the Judicial Conference of Senior Circuit Judges: "Examination of the prospective jurors shall be by the judge alone. If counsel on either side desires that additional matter be inquired into, he shall state the matter to the judge, and the judge, if the matter is proper, shall conduct the examination." In 1928 the Second Circuit upheld the constitutionality of this method of *voir dire,* Justice Learned Hand writing that "while it was the custom at common law to allow the parties to cross-examine, there is nothing in this essential to securing a panel free from bias. The length and particularity of the examination of jurors had become a scandal, and required some effective control." (*Falter* v. *United States* (2d Cir. 1928) 23 F.2d 420, 426.) At present, the federal rules permit the district court to determine, in its discretion, which method of *voir dire* it will use;[9] the great majority of districts follow the practice of interrogation of jurors by the judge, permitting counsel to submit questions for use by the court.[10]

State courts have also moved in the direction of greater judicial control over *voir dire.*[11] We note that Illinois and Michigan, states which previously permitted extensive *voir dire* by counsel, have adopted court rules placing upon the trial judge the primary responsibility to conduct the *voir dire.* (Ill.Sup.Ct. rule 234; Mich. Ct. rule 511.3.) In 1969 the New Jersey Supreme Court, after reviewing the problems of *voir dire* by counsel in that jurisdiction, resolved that in future cases *voir dire* should be "conducted exclusively by or through the trial judges to the extent reasonably possible." *State* v. *Manley* (1969) 54 N.J. 259 [255 A.2d 193, 206, 43 A.L.R.3d 1062]; (see N.J. rule 1:8-3(a)).[12]

Both federal and state judges have noted the benefits derived from in-

in Katz, *Jury Selection: The Twelve Man Jury* (Dec. 1968-Jan. 1969) 5 Trial 39, 40, that counsel obtain handwriting exemplars from juries for analysis by a graphologist.

[9]See Federal Rules of Civil Procedure 47(a); Federal Rules of Criminal Procedure, rule 24(a).

[10]Report of the Judicial Conference Committee on the Operation of the Jury System, *The Jury System in the Federal Courts* (1960) 26 F.R.D. 411, 466.

[11]See Note (1970) 2 Rutgers-Camden L.J. 161, 168; Comment (1966) 11 S.D.L. Rev. 306, 316.

[12]In about 25 states the trial judge has the sole or primary responsibility for *voir dire* of prospective jurors. For a listing of the various statutes, rules of court, and judicial decisions see Comment (1967) 11 St. Louis U.L.J. 234, 237-238. Since 1967 California has adopted rules 228 and 516, which permit use of the federal method of *voir dire* in civil cases (see note 14, *infra*) and New Jersey had adopted the federal practice in all cases (N.J. rule 1:8-3(a)).

creasing judicial participation in *voir dire.*[13] The American Bar Association's Advisory Committee on the Criminal Trial has recommended its adoption in all jurisdictions (American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (1968) p. 63.)[14] The advantages of this method are apparent: it should significantly limit the time consumed in *voir dire;*[15] it reduces the opportunity for counsel to misuse *voir dire* to influence the jurors;[16] and by facilitating preliminary screening of questions by the trial court, it should aid in eliminating improper interrogatories.[17] Such advantages, of course, would be of no avail if the federal system of jury selection actually resulted in unfair and biased juries, but no evidence suggests that this is the case.[18]

[13]For discussion of the beneficial effects of this method of *voir dire* in the federal courts, see Report of the Judicial Conference Committee on the Operation of the Jury System, *The Jury System in The Federal Courts* (1960) 26 F.R.D. 411, 465-468; Goodman, *Should California Adopt Federal Civil Procedure* (1952) 40 Cal.L. Rev. 184, 189; see also Crebs, *Voir Dire Examination of Jurors: An Appraisal by a Judge,* 1963 Ill.L.Forum 644, 645-646 [Ill.]; Murphy, *The Selection of the Jury: Voir Dire Examination* (1968) 44 F.R.D. 271, 275 [Mass.]; Note (1970) 2 Rutgers-Camden L.J. 161, 181 [N.J.].

[14]We note that California Rules of Court, rules 228 and 516 which govern civil jury trials, were amended effective January 1, 1972, to read as follows: "In civil jury trials, the trial judge shall examine the prospective jurors to select a fair and impartial jury. He shall permit counsel for each party to submit additional questions which he shall put to the jurors as he deems proper, or for good cause, he may permit counsel to supplement the examination within limits prescribed by him. . . ." The Select Committee on Trial Court Delay has recommended amending section 1078 to conform to the language of rules 228 and 516. (Select Committee on Trial Court Delay, Report 3 (1972) p. 12.)

[15]*State* v. *Manley* (1969) 54 N.J. 259 [255 A.2d 193, 206, 43 A.L.R.3d 1062]: Goodman, *Should California Adopt Federal Civil Procedure* (1952) 40 Cal.L.Rev. 184, 189; Levit, Nelson, Ball & Chernick, *Expediting Voir Dire: An Empirical Study* (1971) 44 So.Cal.L.Rev. 916, 948; Vanderbilt, *Judges and Jurors: Their Functions, Qualifications and Selections* (1956) 36 B.U.L.Rev. 1, 74; see also authorities cited note 13, *supra.*

[16]See American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (1968) p. 64; Crebs, *Voir Dire Examination of Jurors: An Appraisal by a Judge,* 1963 Ill.L.Forum 644, 645; Levit, Nelson, Ball & Chernick, *Expediting Voir Dire: An Empirical Study* (1971) 44 So.Cal.L.Rev. 916, 950.

[17]See Levit, Nelson, Ball & Chernick, *Expediting Voir Dire: An Empirical Study* (1971) 44 So.Cal.L.Rev. 916, 956; Select Committee on Trial Court Delay, Report 3 (1972) p. 12.

[18]All studies and discussions of the federal system of *voir dire* that we have examined approve that system as serving to secure a fair jury without excessive expenditure of time. These authorities include: Goodman, *Should California Adopt Federal Civil Procedure* (1952) 40 Cal.L.Rev. 184; National Commission on Law Observance and Enforcement, Report on Criminal Procedure (1931) p. 25; Report of the Judicial Conference Committee on the Operation of the Jury System, *The Jury*

We conclude that direct examination by counsel has perverted the purpose of *voir dire,* and transformed the examination of jurors into a contest between counsel for the selection of a jury partial to his cause and for the attainment of rapport with the jurors so selected, a contest which may overshadow the actual trial on the merits.[19] ■ This transformation compels us to emphasize again the dual purpose of section 1078, which confers not only a right of counsel to reasonable examination of prospective jurors, but also a duty upon the trial court to select an impartial jury.[20] In 1928 this court found it necessary to admonish trial judges that they had been placing too literal an interpretation upon the duty of the trial court, and paying too little attention to the right of counsel.[21] ■ The subsequent exploitation of the *voir dire* for partisan advantage has reversed the situation: it is now time to stress that counsel's right is only to a *reasonable* examination of prospective jurors—reasonable in length, in method, in purpose, and in content.[22]

The opportunity for reasonable examination of jurors afforded by section 1078 does not formulate a right to compete in achieving jury rapport but a right to submit questions necessary to detect and eliminate unqualified jurors.[23] The requirement that such questions be submitted to the trial

*System in the Federal Courts* (1960) 26 F.R.D. 411, 465-468; Select Committee on Trial Court Delay, Report 3 (1972) p. 13; Tone, *Voir Dire, New Supreme Court Rule 24-1: How It Works* (1958) 47 Ill.Bar J. 140.

[19]Chief Justice Burger commented at the National Conference on the Judiciary at Williamsburg, Virginia, on March 12, 1971, that selecting a jury has "become in itself a major piece of litigation consuming days or weeks." (L.A. Times, March 13, 1971, § 7, at p. 17, col. 1.)

[20]See *People* v. *Estorga* (1928) 206 Cal. 81, 84 [273 P. 575]; *People* v. *Parker* (1965) 235 Cal.App.2d 86, 98 [44 Cal.Rptr. 900]; Comment (1929) 18 Cal.L.Rev. 70, 74-75.

[21]*People* v. *Estorga* (1928) 206 Cal. 81, 84 [273 P. 575].

[22]". . . [I]t is not only the privilege but it is also the duty of the court to restrict the examination of jurors within reasonable bounds so as to expedite the trial." (*People* v. *Semone* (1934) 140 Cal.App. 318, 326 [35 P.2d 379]; see *People* v. *Adams* (1971) 21 Cal.App.3d 972, 979 [99 Cal.Rptr. 122]; *People* v. *Parker* (1965) 235 Cal.App.2d 86, 98-99 [44 Cal.Rptr. 900]; *People* v. *Jefferson* (1948) 84 Cal. App.2d 709, 712 [191 P.2d 487]: *People* v. *Casserio* (1936) 16 Cal.App.2d 223, 227 [60 P.2d 505].)

[23]". . . [E]xamination may be oral or written, direct or indirect. For example, under the original equity and admiralty procedures all examination of witnesses was conducted in writing: (Wigmore on Evidence, § 799.) Our own discovery rules recognize two classes of depositions, those taken by oral examination, and those taken by written interrogatories. (Code Civ. Proc., § 2016.) Unlike Federal Rules of Civil Procedure, rule 47, and Federal Rules of Criminal Procedure, rule 24, both of which refer to the 'conduct of the examination' of prospective jurors, our rules are silent on the subject of the conduct of the examination and merely refer to 'examination' of prospective jurors without specifying any particular mode of examination." (*Rousseau* v. *West Coast House Movers* (1967) 256 Cal.App.2d 878, 883 [64 Cal.Rptr. 655].)

judge, who puts those he finds proper to the jurors, will not crucify this right. ██ ██ We conclude that Penal Code section 1078 permits, among other methods,[24] a procedure of *voir dire* in which the court examines prospective jurors and permits counsel to submit questions to the court which, if the court finds them within the scope of reasonable examination, the court itself propounds to the jurors; the court did not err in choosing to employ this method of *voir dire* in the present case.[25]

## 2. ██ *The trial court did not commit prejudicial error in refusing to put to the jury the additional questions requested by defense counsel.*

We turn now to defendant's second contention. After the court completed its *voir dire* of the original 12 prospective jurors, defense counsel requested additional questions, but the court refused to put those inquiries to the jurors.[26] Defendant contends that in so ruling the court denied his right to reasonable examination of prospective jurors. As we explain, however, we believe that defendant failed to sustain the burden of showing that the court erred in rejecting his proposed questions, or that the error, if any, was prejudicial.

Counsel first requested that Mrs. Meals,[27] the only Negro on the jury panel, be asked if that fact "might in any way place her in a compromising position." Mrs. Meals had already affirmed that she would not be prejudiced for or against defendant because of his color, and that she knew of no reason why she could not serve as an impartial juror. The court could reasonably conclude that Mrs. Meals, in essence, already made clear that her judg-

---

[24]*Rousseau* v. *West Coast House Movers* (1967) 256 Cal.App.2d 878, 883-884 [64 Cal.Rptr. 655], sets out five methods for jury *voir dire*.

"1. The court may turn all interrogation over to counsel and delegate to counsel the conduct of its examination of prospective jurors.

"2. The court may conduct an initial examination of prospective jurors and then permit counsel to conduct a general examination of prospective jurors.

"3. The court may conduct an initial examination of prospective jurors and then permit counsel to conduct an examination of prospective jurors on specific subjects only.

"4. The court may itself conduct the examination of prospective jurors and require the examination of prospective jurors by counsel to be conducted by interrogation through the court.

"5. The court may itself conduct the examination of prospective jurors and require examination by counsel to be conducted by interrogation through the court, but when positive answers on a particular subject develop, permit counsel to conduct an examination on that subject by direct oral interrogation."

[25]Language to the contrary in *People* v. *Adams* (1971) 21 Cal.App.3d 972 [99 Cal.Rptr. 122], is disapproved.

[26]The dialogue between the judge and defense counsel is set out, *supra*, at pages 820-821.

[27]Mrs. Meals served as foreperson of the jury.

ment would not be compromised by racial considerations and that further inquiry would be superfluous.

Defendant also requested further inquiry into the occupations of the husbands of three jurors, Mrs. Rotman, Mrs. Klobucar and Mrs. Hupp,[28] but did not indicate specifically what inquiries he desired, nor how they might lead to grounds for a challenge for cause. ■ As we said in *People* v. *Rigney* (1961) 55 Cal.2d 236, 244 [10 Cal.Rptr. 625, 359 P.2d 23]: " 'It is now well settled in this state that a juror may not be examined on *voir dire* solely for the purpose of laying the foundation for the exercise of a peremptory challenge.' (*People* v. *Ferlin*, 203 Cal. 587, 598 [265 P. 230].) If special circumstances in the present case made defendant's questions relevant to show bias or other grounds for a challenge for cause he should have informed the court of his reasons for asking the questions."[29]

■ Defense counsel also requested that two questions be put to the entire panel: whether the jurors would consider defendant more likely to be guilty than innocent because he was in custody, and whether they understood that he was in custody because he could not afford bail. The first question was sufficiently answered by the jurors' earlier affirmation that they understood and would apply the presumption that a defendant is innocent until proven guilty. The second question, whether defendant was in custody because he could not afford bail or for some other reason (such as violation of parole) poses a query to which the jurors could not be expected to know the answer and should not be invited to speculate. If defense counsel desired to inform them of the reason why defendant was in custody, the proper way to do so was through an instruction to the jury, not by means of *voir dire*.[30]

Finally, counsel stated that he wanted "specific questions of individual jurors as to whether or not they have participated in a situation where they were asked to identify any individual." We can conceive that this inquiry might lead to grounds for a challenge for cause, since the case against defendant relied upon identification testimony, and the past experience of the jurors in such situations might affect their ability to maintain impartial-

---

[28]Mrs. Klobucar was dismissed on peremptory challenge; Mrs. Rotman and Mrs. Hupp served as jurors.

[29]See also *People* v. *Hinshaw* (1919) 40 Cal.App. 672, 674 [182 P. 59].

[30]It is not a function of *voir dire* to educate the jurors as to the facts of the case, nor as to the principles of law which may be applicable. (See *People* v. *Love* (1960) 53 Cal.2d 843, 852 [3 Cal.Rptr. 665, 350 P.2d 705]; *Rousseau* v. *West Coast House Movers* (1967) 256 Cal.App.2d 878, 882-883 [64 Cal.Rptr. 655].)

ity in the present case.[31] We note, however, that at trial defense counsel did not attempt to indicate to the court how his requested inquiry could lead to a challenge for cause. And on appeal counsel offers no contention that the trial court's refusal to permit this one inquiry, standing alone, could have so prejudiced the defendant as to require reversal of the judgment. (See Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

3. ■ *The court's mistake in swearing the jury before defendant had exhausted his peremptory challenges did not constitute prejudicial error.*

Penal Code section 1070 grants a defendant accused of a noncapital offense 10 peremptory challenges to prospective jurors. After the present defendant had made six peremptory challenges, the court mistakenly announcd that peremptory challenges had been completed by the defense and waived by the prosecution. On request of the court the clerk then swore the jury. The court then admonished the jury and declared a 10-minute recess.

During the recess the judge discovered that defendant was entitled to four more peremptory challenges. He asked the defense counsel if he wanted to exercise further peremptory challenges; counsel replied that he would have to confer with defendant. The record then shows that defendant's counsel left the court's chambers, reentered a few moments later, and stated "We will make no further peremptory challenges."

The record thus indicated that defendant was satisfied with the jury selected and did not elect to exercise his remaining peremptory challenges. Defendant maintains, however, that once a jury has been sworn the court cannot allow peremptory challenges (see *People* v. *Young* (1929) 100

---

[31]Although each of the jurors asserted that he knew of no reason why he could not serve as an impartial juror, such assertions do not eliminate the necessity for additional reasonable inquiry to uncover concealed or subtle bias. Hafif, *Adequate Voir Dire* (1969) 44 State Bar. J. 858, 860; see *Walker* v. *Greenberger* (1944) 63 Cal. App.2d 457, 463-464 [147 P.2d 105]; Garry, *Attacking Racism in Court Before Trial*, in Minimizing Racism in Jury Trials (Ginger ed. 1969) page xxii, asserts that "The average judge's idea of *voir dire* is just to ask 'Can you be fair?' Once the prospective juror has answered 'yes,' everything else is considered irrelevant and the judge passes on to the next juror, even though Adolph Hitler himself would have answered that question in the affirmative."

We doubt that this is the average judge's concept of *voir dire,* but the comment does illustrate the danger that a biased juror may be unwilling to confess that bias openly, and that questions to which there is a "right" and a "wrong" answer may be less likely to reveal such bias than more open-ended questions. See generally Blauner, *Sociology in the Courtroom: The Search for White Racism in the Voir Dire* in Minimizing Racism in Jury Trials (Ginger ed. 1969) pages 43-71; Broeder, *Voir Dire Examinations: An Empirical Study* (1965) 38 So.Cal.L.Rev. 503.

Cal.App. 18, 20 [279 P. 824]), and thus in declining to assert such challenges he waived no right. He also contends that to exercise peremptory challenges after the jury has been sworn would have prejudiced the jury against defendant. The short answer to both arguments is that if defense counsel believed that the court had erred and by that error selected a jury unfair to defendant, he should have articulated those views at the time. The court might then have been able to fashion some means of remedying the error; if no workable remedy appeared the court could have declared a mistrial.

In *People* v. *Bugg* (1947) 79 Cal.App.2d 174 [179 P.2d 346], when defendant had exercised only nine peremptory challenges, the trial judge miscounted and ordered the jury sworn. The Court of Appeal stated: "There is no intimation in the record that defendant desired to exercise an additional peremptory challenge or would have done so if the mistake of law had not been made. There is nothing to indicate that an objectionable juror had been forced on defendant or that he was dissatisfied with the jury selected. Under such circumstances the error cannot be held to be prejudicial." (79 Cal.App.2d at p. 176.) We find this language apposite to the present case, and conclude that the court's premature swearing of the jury does not constitute grounds for reversal of the judgment against defendant.

4. *Substantial evidence supports defendant's conviction.*

We summarize the evidence as it appears from the testimony before the trial court.

The victim George Stansbury, Jr., lived with his brother Bennie Peterson in an apartment in Los Angeles County. On October 4, 1969, George had $120 in savings in a money clip in a pocket of his blue jeans. He kept the house key on the dresser in his bedroom.

On the afternoon of October 4 defendant, a frequent visitor at the Stansbury apartment, arrived there with a Mr. Clemmons. Clemmons asked George to change a $5 bill; George, in defendant's presence, took out the money clip and made change. Defendant left the apartment about a half hour later, but returned that evening. At various times during the evening defendant and George conversed in the bedroom, and for a few minutes defendant was alone in that room. Eventually defendant left the apartment and about 3:30 a.m. George and his brother prepared to go to sleep. George checked the back door and Bennie locked the front door. George

removed his blue jeans with the money clip in a pocket and stuffed them under the mattress. He went to sleep in the bedroom and Bennie laid down on the living room couch.

Bennie testified that he was awakened by a rumbling noise coming from the bedroom, but did not investigate and soon fell asleep again. He awoke again about 6 a.m. to see defendant standing over him about two to three feet away. After one or two seconds defendant turned and walked to the kitchen. Bennie did not get up and soon returned to sleep.

About 6:15 George came out of the bedroom; his head was bruised and bleeding and his jaw was broken. George did not know what had happened, but he soon discovered that although the blue jeans were still under the mattress the money and money clip were gone. The key was also missing from the top of the dresser, and the back door was unlocked.

Later that morning defendant telephoned the apartment. According to Bennie, who answered the phone, the caller identified himself only as "Rap," but Bennie knew this to be defendant's nickname and recognized defendant's voice. Defendant said he had passed by the apartment, seen a police car, and wondered what was going on. Bennie asked who was calling; defendant responded by asking why Bennie wanted to know. Bennie then handed the phone to a police officer. The record does not indicate whether there was any conversation between defendant and the officer.

Defendant denied committing the assault or robbery. He testified that he left the Stansbury apartment about 2 a.m. and arrived home at 4:30, going to bed shortly thereafter. His parents corroborated that defendant came home about 4:30 and had retired. He arose around 7 a.m. and about two hours later drove past the Stansbury apartment while going to a grocery store. Noticing the police car outside the apartment, he went to a friend's house and phoned to inquire into what was happening.

From this summary of the record, we conclude that substantial evidence supports the verdict against defendant. It is true, as defendant points out, that his conviction rests largely on the identification of defendant as the intruder by Bennie Peterson, and that this identification might be mistaken. ▮ The issue on appeal, however, is whether substantial evidence supports the verdict, not whether that evidence demonstrates guilt beyond a reasonable doubt. (*People* v. *Bynum* (1971) 4 Cal.3d 589, 599 [94 Cal.Rptr. 241, 483 P.2d 1193]; *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal. Rptr. 417, 475 P.2d 649].) ▮ ▮ Viewing the evidence in the light most favorable to the prosecution (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]), and resolving all controversy as to

the credibility to be accorded Bennie's testimony in favor of the verdict (see *People* v. *Lyons* (1956) 47 Cal.2d 311, 319-320 [303 P.2d 329]), we conclude that the evidence suffices to support the verdict.

The judgment is affirmed.

Wright, C. J., McComb, J., Burke, J., and Sullivan, J., concurred.

**MOSK, J.**—I dissent.

Paying obeisance to the gods of expediency and temporal economy, the People would reduce jury selection in criminal cases to a wooden process, ritualistic in form, ineffectual in practice, haphazard in result. I concede that examples may be found of imposition upon court and jury time by repetitive *voir dire* examination. I do not agree that judges are impotent to curb this abuse by methods short of totally eliminating the right of participatory interrogation by counsel. And I do not agree that Penal Code section 1078, or any other statute, authorizes such draconian procedure by a trial court.

The legislative history of section 1078 is recorded in the majority opinion. (*Ante,* pp. 821-823.) As originally proposed in 1927, the statute would have vested in the trial judge the discretion whether to permit reasonable examination of prospective jurors by counsel for the People and for the defendant. But the Legislature deliberately rejected the proposal, eliminated the reference to a discretion in the trial judge, and with pointed emphasis declared the latter *shall* permit reasonable examination by counsel. The Code section has remained unchanged since 1927.[1]

Despite this unmistakable indication of legislative intent, the Attorney General asserts through strange and convoluted reasoning that "shall" is not mandatory and that the trial court nevertheless retains discretion to prohibit interrogation of prospective jurors by counsel because—mirabile dictu—"examination" as used in the code does not mean oral examination. I admire the originality of the concept, but its tortured logic escapes me.

---

[1]There have been numerous abortive efforts at restrictive change. Two recent proposals failed to pass the Legislature in 1971, and another measure foundered in the 1972 session. Each proposal would have amended section 1078 to deny counsel the right to personally conduct an unfettered examination of prospective jurors. The very fact it was believed necessary to introduce such bills, of course, strongly implies the majority are wrong in asserting that section 1078 *already* permits counsel to be denied that right.

The Judicial Council amended rules 228 and 516, effective January 1, 1972, to provide "In all civil trials, the trial judge shall examine the prospective jurors . . . ." The limitation to civil trials cannot be deemed insignificant.

A trial is "a communicative process." (Frank, Courts on Trial (1949) p. 186.) "Examination" has always been defined to include "interrogation." (Bouvier's Law Dict. (Rawle 3d rev. 1914) p. 1107.) Black describes "examination" as a series of questions put to a person by a party or his counsel for the purpose of bringing knowledge before the court. (Black's Law Dict. (4th ed. 1951) p. 664.) Ordinarily counsel produce knowledge for the court; under the inverse procedure approved here, the court is expected to produce knowledge for counsel.[2]

The majority raise a *concursus horribilium* over lengthy *voir dire* examination. Anyone with trial experience has suffered on occasion from unduly prolonged and therefore unreasonable *voir dire* proceedings, whether caused by design or ineptitude of counsel. But reasonable *voir dire* conducted by counsel is a significant phase of a jury trial and should not be cavalierly discarded because of impatience, frustration, or a catering to temerarious public mood. As Professors Zeisel, Kalven and Buchholz wrote in their study, Delay in the Court (1959), at page 103, "Voir dire has become a complex institution today and has in the eyes of the bar important functions other than the selection of jurors. The appropriate length for it therefore raises questions that go beyond those of simple efficiency."

I pause first to stress the considered views of the organized bar. That the Attorney General is not speaking for the prosecutors of this state in defending the procedure adopted by this trial judge and approved by the majority is made crystal clear in the amicus curiae brief filed by the District Attorneys and County Counsels Association of California. The state's prosecuting counsel vigorously oppose this effort to deny them the right to personally question prospective jurors, and adopt the explanation in *People v. Adams* (1971) 21 Cal.App.3d 972, 978 [99 Cal.Rptr. 122]: "Every experienced trial counsel knows that it is an unrealistic fiction to assume that a series of generalized questions asked by a trial judge of the jury panel as a whole can as effectively probe the recesses of a juror's mind and determine his or her real attitudes and prejudices as can individual questions propounded by trial counsel. An attorney who is fully acquainted with his case and actively pursuing a determination as to the individual juror's actual state of mind is in a superior position to pursue the interrogation in particular areas; . . ."

Interrogation of prospective jurors is essential to the intelligent exercise of counsel's rights to challenge. In the opinion of the district attorneys and

---

[2]The procedure employed by the trial judge here is neither innovative nor responsive to peculiarly contemporary problems. Indeed the precise method was used by a Florida trial judge in 1895. Despite a permissive statute in that state, its Supreme Court on review ordered trial courts to thereafter conform to "the better and more prevalent practice [is] to permit such examinations to be made by the counsel in the case, . . ." (*Jones* v. *State* (1895) 35 Fla. 289 [17 So. 284].)

county counsel, control over the manner in which proper questions are put, and the order in which the questions are asked, often will suggest reasons not exposed by the court's interrogation for the exercise of challenges. Only the trial counsel has a grasp of the facts of the case sufficient to propound questions that might expose a subtle, previously undetected bias in the hidden recesses of a prospective juror's mind. A judge could not know these facts prior to trial of the case; indeed, if he does, he should be deemed disqualified.

At the opposite pole of the criminal bar the California Public Defenders Association also filed an amicus curiae brief, contending that to prohibit counsel from personally conducting reasonable *voir dire* in effect results in denial of the right to counsel. Experienced trial practitioners deem the skillful use of *voir dire* during selection of a jury to be a valuable tool of the trade; to blunt or destroy that tool is to restrict the effectiveness of representation by counsel.

While the public defenders' contention that denial of oral *voir dire* is the equivalent of denial of counsel may be overstating the case, the undeniable fact is that this procedure will severely handicap counsel in exercising peremptory challenges. Eyeball-to-eyeball examination of a potential juror may lead counsel to believe the juror to be untruthful or evasive in his answers, or possibly to entertain some unexpressed hostility toward defense attorneys or prosecutors generally or toward the individual attorney involved. Counsel may suspect the potential juror to possess a latent prejudice against persons accused of crimes, against police, or to possess some other emotional bias that might make it difficult for the juror to be impartial.

If counsel is not permitted to rely on his impressions of the veniremen gained from personal interrogation, he will be compelled in exercising peremptory challenges to fall back on his own latent prejudices and biases, such as those against certain racial and ethnic groups, occupations, professions, financial status, social class, community of residence, and other factors that should be irrelevant, and could be made so by forthright responses from prospective jurors.

Dependence upon the trial judge alone, even when questions are submitted to him, to effectively probe into the sensitive areas of racial, cultural, and economic bias, displays majestic indifference to the realities of contemporary urban life. No well-intentioned but necessarily general inquiry by the court—such as, "Will you be prejudiced against the defendant because of his race or color?"—is likely to produce anything but a negative response. Skillful counsel, by contrast, might well be able to reveal in a

venireman a deep-rooted aversion to unorthodox dress, speech patterns, or life style of ghetto residents of a particular race or color.[3]

To complete the near-unanimity of the antipathy of the profession to the procedure approved by the majority, the State Bar itself has opposed legislative restriction of section 1078. A resolution adopted by the Board of Governors in 1971 (No. 1-3) expresses its opposition for the following persuasive reason: "The contention that any applicable amount of time will be saved by severely restricting voir dire examination is more than out-weighed by the serious loss of opportunity for trial counsel to interrogate prospective jurors on a person-to-person basis. The trial judge cannot possibly be aware of the concerns of trial counsel in regard to what trial counsel feels he must know about prospective jurors."

I recognize that opinions of the bar, although persuasive on matters of practice, cannot be deemed controlling if unsupported by authority. Here, however, the decisions of this court both before and after adoption of section 1078 have directed trial judges to respect the right of counsel personally to interrogate prospective jurors. This right originated as early as 1855 (*People* v. *Backus* (1855) 5 Cal. 275), and was honored even during efforts of critical courts to limit *voir dire* to queries material to a challenge for cause. (*People* v. *Edwards* (1912) 163 Cal. 752 [127 P. 58].)

A year before section 1078 was enacted, we called it prejudicial error "for the court to refuse the appellant the right to examine the jurors. . . ."

---

[3]In *United States* v. *Dellinger* (7th Cir. 1972) 472 F.2d 340 the court said: "The government's position must rest upon an assumption that a general question to the group whether there is any reason they could not be fair and impartial can be relied on to produce a disclosure of any disqualifying state of mind. We do not believe that a prospective juror is so alert to his own prejudices. Thus it is essential to explore the backgrounds and attitudes of the jurors to some extent in order to discover actual bias, or cause. [Citation.] . . .

"If this right is not to be an empty one, the defendants must, upon request, be permitted sufficient inquiry into the background and attitudes of the jurors to enable them to exercise intelligently their peremptory challenges, . . .

". . . significant, were the conflicts of values represented by the so-called youth culture—hippies, yippies and freaks—in contrast with the more traditional values of the vast majority of the community, presumably including most citizens summoned for jury service. Again, we are not unaware that many otherwise qualified members of the community could not be impartial toward, and in fact are often offended by, persons who wear long hair, beards, and bizarre clothing and who seem to avoid the burdens and responsibilities of regular employment. . . .

". . . Natural human pride would suggest a negative answer to whether there was a reason the juror could not be fair and impartial. A juror might well answer negatively in good faith, without stopping to consider the significance or firmness of impressions he might have gained from news reports. We think the question is not adequate to bring out responses showing that jurors had gained information and formed opinions about relevant matters in issue if in truth any had."

*(People* v. *Carmichael* (1926) 198 Cal. 534, 547 [246 P. 62].) Indeed, our opinion explicated at length the inadequacy of general questions asked by the court: "It is contended by the respondent on this hearing that the error of the court, if any such error was made, in refusing to permit appellant to examine the jurors regarding the result of the former trial and as to their state of mind upon learning of such result, if any of them had learned of said result, was cured by these general and special questions asked of the jurors. We are not certain that this is the case. *The asking of a general question of a juror does not always direct his attention to all the elements which go to make up the subject matter of such question.* For example, a juror in answer to a general question might state with perfect sincerity that he knew of no reason why he could not give the defendant a fair and impartial trial, but upon a further and more minute examination it might be shown that his conception of a fair and impartial trial for one who had been previously tried by a jury, ten of whom believed him guilty, differed in many material respects from that which the law accords to all persons accused of crime. Furthermore, he might presume the defendant innocent until proven guilty, but his state of mind might be such that it would require less evidence to convince him of defendant's guilt in a case where the latter had been previously tried with the result as above indicated, than if no previous trial had been had. He might be in perfect accord with the law which declares that a defendant shall not suffer conviction until proven guilty beyond all reasonable doubt, but having heard that the former jury stood ten to two for conviction, he might not feel called upon to scrutinize and weigh the evidence with that extreme care and caution which the law enjoins of every juror in passing upon the life and liberty of one against whom a criminal accusation has been made." (Italics added.) *(Id.* at p. 545.)

After adoption of section 1078, the attitude of this court remained unchanged. In *People* v. *Coen* (1928) 205 Cal. 596, 605-606 [271 P. 1074], we found it "admittedly true that the trial court, in assuming to act in conformity with the provisions of section 1078 of the Penal Code as amended in 1927, did undertake at the outset of the examination of the prospective jurors in this cause to unduly limit the right of counsel for the defendant to conduct such reasonable examination of certain of the prospective jurors as is still permitted under the provisions of said amended section of the Penal Code, . . . We feel satisfied that the trial court unduly restricted the examination of the juror Smith in the foregoing regard, and that it also unduly restricted the right of counsel for the defendant to make similar inquiries of certain other of the prospective jurors who were among the twelve first called for examination."

Again in *People* v. *Barrett* (1929) 207 Cal. 47, 49 [276 P. 1003], we reached a similar conclusion: "The effect of the trial court's procedure in

the matter of the examination of jurors on *voir dire* was to effectively stifle any attempted detailed examination of the talesmen by counsel for the purpose of developing possible grounds for challenge for cause, thus depriving appellant of the constitutionally guaranteed right of a trial by jury, including the right to the selection of a fair and impartial jury." And in *People* v. *Estorga* (1928) 206 Cal. 81, 84 [273 P. 575], we said unequivocally: "The purpose of the statute, however, was not to bring about expedition by depriving either the People, or defendants charged with the commission of offenses, of the right of a reasonable examination of prospective jurors, and the Legislature was particular to provide for that right."

Cases relied upon by the Attorney General fortify this dissent, not the majority opinion. *People* v. *Brown* (1929) 207 Cal. 172 [277 P. 320], and *People* v. *Lazarus* (1929) 207 Cal. 507 [279 P. 145], authorize the trial court to conduct an interrogation of jurors before permitting counsel to do so. That is normal trial procedure. No one quarrels with cited decisions permitting a limitation to reasonable inquiry, but *neither respondent nor the majority can point to a single reported criminal case in California sanctioning total gagging of counsel.*

Finally, as recently as 1964 Justice Tobriner spoke in terms of "an examination of the whole picture" in *People* v. *Terry* (1964) 61 Cal.2d 137, 147 [37 Cal.Rptr. 605, 390 P.2d 381], and in doing so relied upon Penal Code section 1078: "In the instant case the court's rulings deprived the jury of an examination of the whole picture. In the course of *voir dire* examination of prospective jurors the court refused to permit defendant the right to examine jurors with respect to their possible reaction to his claim of innocence and misled the jury into believing that they could not take into consideration that claim. The rulings thereby eliminated from the jury's deliberations the defendant's theory of the facts and any possible doubt as to defendant's guilt.

"Neither the defendant nor the prosecution should suffer an improper restriction upon a reasonable *voir dire* examination of prospective jurors or a frustration of an intelligent exercise of peremptory challenges and challenges for cause (Pen. Code, § 1078)."

Since *Terry* speaks of permitting *defendant* and the *prosecution* the right to examine jurors—not the court, and not vicariously through the court—I must assume the majority in eliminating the right are now overruling *sub silentio* that portion of the *Terry* decision. While *Terry* had some defects which I have previously noted (see my concurring and dissenting opinion in *People* v. *McClellan* (1969) 71 Cal.2d 793, 815 [80 Cal.Rptr. 31, 457 P.2d 871]), I would not disturb the quoted portion of the opinion.

In addition to its policy and precedential shortcomings, the majority

opinion will inevitably produce burdensome judicial fallout. When it is counsel who interrogates prospective jurors he has no legal basis for claiming dissatisfaction with the ultimate product of the selection process in which he participated. But if the court alone interrogates veniremen, taking some questions suggested by counsel and, as here, imperiously rejecting others, an issue for appellate review emerges. In such circumstances we must recreate the scene, ascertain if the rejected queries should have been permitted, and if so, undertake to determine whether the exclusion was prejudicial.[4] This is unlike the usual case in which we weigh the prejudicial effect of evidence; here the issue is the prejudicial inclinations of jurors. For a reviewing court, in this context, to attempt an analysis of the juror's undisclosed predilections in order to reach a conclusion on potential prejudice would require an omniscience which I for one disclaim. The courthousekeeping seal of approval on denial of counsel's right to interrogate prospective jurors presages new bases for appeal with which reviewing courts will be grappling in innumerable future cases. A substantial portion of the time saved at trial may thus be expended on appeal.[5]

Justice Marshall, concurring and dissenting in *Ham* v. *South Carolina* (1973) 409 U.S. 524, 534 [35 L.Ed.2d 46, 54-55, 93 S.Ct. 848], put the issue in proper context: "It may be that permitting slightly more extensive *voir dire* examination will put an additional burden on the administration of justice. But as Mr. Chief Justice Hughes argued 40 years ago 'it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred. No surer way could be devised to bring the processes of justice into disrepute.' *Aldridge* v. *United States,* 283 U.S., at 315." (See also the majority opinion of Justice Rehnquist and the concurring and dissenting opinion of Justice Douglas in *Ham.*)

The trial court abused its discretion and ignored the clear command of section 1078 in compelling counsel to submit questions in writing and denying counsel the right to orally interrogate prospective jurors. That such

---

[4]In *Swain* v. *Alabama* (1964) 380 U.S. 202, 219 [13 L.Ed.2d 759, 771-772, 85 S.Ct. 824], it was held the denial or *impairment* of the right to peremptorily challenge veniremen is reversible error *without a showing of prejudice.*

[5]In *United States* v. *Dellinger, supra,* 472 F.2d 340, one of the significant grounds for reversal was inadequacy of the federal trial court's *voir dire* examination. A bitter trial of months' duration, consuming 22,000 transcript pages, was thus in vain.

procedure is permissible in federal courts, and that certain commentators may believe some economy in time is thereby achieved (but see Gutman, *The Attorney-Conducted Voir Dire of Jurors: A Constitutional Right* (1972) 39 Brooklyn L.Rev. 290), provide no statutory authority in California for such radical departure from the time-honored and legislatively mandated practice of criminal jury selection.

I would reverse the judgment.

Appellant's petition for a rehearing was denied March 15, 1973, and the opinion was modified to read as printed above. Mosk, J., was of the opinion that the petition should be granted.